Illinois Central Ry. Co. v. Murphy's Admr.

Case 108—ACTION BY JAMES M. MURPHYS ADM'R AGAINST THE ILLINOIS CEN.· RY. CO. FOR DAMAGES FOR CAUSING THE DEATH OF PLAINTIFFS INTESTATE —Nov. 21.

## Illinois Central Ry. Co. v. Murphy's Admr.

Apeal from Muhlenberg Circuit Court.

W. P. SANDIEDGE, Circuit Court.

Judgment for Plaintiff. Defendant appeals. Affirmed.

123   787
f126  727

123   787
f129  273

123   787
f130   34
c130   37
130   38
d131  596
f135  227
d135  295

123   787
138   464

1. Railroads—Actions for Causing Death—Continued Use of Railroad Track by Pedestrians—Knowledge of Company—Presumption—In an action against a railroad company for the killing of a foot passenger walking on its track in a town of two thousand inhabitants, at a point in its switch yard where, though it does not appear there was a public street or highway, but it does appear it was used by the public and had been so used for more than fifteen years as a roadway by foot passengers with the knowledge of the operatives of the train, such constant and continued use raised the presumption of knowledge by the company that it was so used.

2. Populous Communities—Control of Train—Lookout Duty—Where a railroad track runs through a populous community along or across streets, where from the nature of things persons may reasonably be expected at any time, it is the duty of those in charge of the train to so operate it at a speed which has the train under control; and keep such a lookout as will enable the operatives to give timely warning of

Illinois Central Ry. Co. v. Murphy's Admr.

its approach, as well as to stop it in case of necessity before injury has been inflicted on a trespasser.

3. Speed of Train—Absence of Legislative Regulation—Negligence—Question for Jury—Where legislation has not regulated the speed of trains in populous communities, each case must stand upon its own facts. Whether the speed of the train is so great as to amount to negligence will be a fact to be determined·by the jury. Fast trains are a necessity, but nobody has a right to be in such a hurry as to run over and kill people who happen to get in their way, and who have a right to be or are known to be at the point of collision. No requirements of commerce can justify such a rule, nor has such inhuman doctrine any place in our laws.

4. Joint Action Against Company and Engineer—Verdict of Jury Against One—Effect—In an action against the railroad company and its engineer for the negligent killing of a person on its track, it does not follow that the same verdict may be rendered against both of the defendants. If the plaintiff is entitled to his verdict against two tort feasors, but the jury are able to agree only as to one of them and gives a verdict accordingly, there is no reason why the plaintiff should not have at least what the jury has given him.

5. Where, in an action for death caused through being struck by a train while walking on the track, the conductor is made a co-defendant with the company, and the court instructs the jury to find for him, the failure of the jury specifically to respond to such instruction in their verdict "for plaintiff," and which fixed the damages against the company without mentioning the conductor, cannot avail the company.

J. M. DICKINSON, TRABUE, DOOLAN & COX and BROW-

.DER & BROWDER, for appellant.

Among other things the appellant relies on the following grounds for a reversal:

(1) Irregularity in the proceedings of the court and jury, in that the verdict did not comply with, nor respond to, the instructions given.

(2) That the verdict was void for uncertainty because while peremptorily instructed by the court to find for conductor Dugan, the jury refused to find either for against him, thus disobeying the positive mandate of the court, and because, further, while the negligence, if any, of the railroad company was exclusively the negligence of engineer Curley, and this alleged negligence was absolutely inseparable and indivisible, in law and logic, the jury

Illinois Central Ry. Co. v. Murphy's Admr.

---

adjudged the company guilty, and acquitted the engineer of all blame, although his alleged acts and omissions were the only acts and omissions imputable to the company—he being at the time, in legal comtemplation, the company itself.'

(3) That the verdict is not sustained by sufficient evidence.

(4) That the trial court erred to its prejudice by giving Instructions 1, 2, 3, 4, 5, 6, and 7, and by refusing to give Instructions 12 and 13.

(5) That the court erred to its prejudice by overruling its motion for a peremptory instruction to find a verdict for the defendants.

### AUTHORITIES CITED.

6 Encly. of Pleadings & Practice, 683, et seq.; 52 Wis. 323, Gauman v. Abrams; 3 Elliott on Railroads, Sec. 1095, 69 Md. 551; B. & O. S. W. R. Co. v. State, 83 Ga. 595; White v. Central R. & B. Co. 95 Mo. 286; Guenther v. St. L. & I. M. R. Co. 17 R. 1004; Helm v. L. & N. R. R. Co. 20 R. 189; Jacobs v. Ohio & V. S. W. R. Co. 22 R. 191; Ward's Admr. v. I. C. R. Co. 105 Ky. 131; Louisville Gas Co. v. Kaufman, Straus & Co. 106 Ky. 535; L. & N. R. Co. v. Taaffee, 108 Ky. 172; L. & N. R. Co. v. Penrod, 25 R. 1986; Gregory v. L. & N. R. Co. 13 R. 18; Craddock v. L. & N. R. Co. 24 R. 2350; Chinn's Admr. v. C. & O. Ry. Co. 82 Ky. 212; L. & N. R. Co. v. Howard's Admr. 7 Gill & J. (Md.), 78; Farmer's Bank v. Duvall; L. & N. R. R. Co. v. Redmon, 28 K. L. R. 1293, 91 S. W. 722; Brown v. L. & N. R. R. Co., 97 Ky. 228; Manning v. I. C. R. R. Co., 27 K. L. R. 142; Yates v. Same, 28 K. L. R. 75; L. H. & St. L. R'y Co. v. Hathaway, 28 K. L. R. 628; Smith v. I. C. R. R. Co., 28 Ky. L. R. 724; L. H. & St. L. R'y. Co. v. Jolly, 28 K. L. R. 989; L. & N. R. R. Co. v. Daniel, 28 K. L. R. 1146; L. & N. R. R. Co. v. Redmon, 28 K. L. R. 1293; M. & O. R. R. Co. v. Dowdy, 28 K. L. R. 1371; Johnson v. L. & N. R. R. Co., 29 K. L. R. 36; Beiser v. C. & O. R'y. Co., 29 Ky. L. R. 250; Dorsey v. L. & N. R. Co., 26 Ky. L. R. 233.

S. R. CREWDSON, R. Y. THOMAS and E. A. TAYLOR, for appellee.

### AUTHORITIES.

C. & O. R. Co. v. Dix's Admr., 20 Ky. L. R. 792; I. C. R. R. Co. v. Cooley, opinion filed Nov. 3, 1905; Winston's Admr. v. I. C. R. R. Co., 23 Ky. L. R. 1283; Pierce's Admr. v. I. C. R. R. Co., 27 Ky. L. R. 801; I. C. R. R. Co. v.

Jones' Admr., 26 Ky. L. R. 31; Louisville Eastern R. R. Co. v. Poulter's Admr. 27 Ky L. R. 193; C. N. O. & T. P. R. R. Co. v. Burgess, 27 Ky. L. R. 252; Same v. Morris, 27 Ky. L. R. 388; Sight's v. L. & N. R. R. Co., 25 Ky. L. R. 1548; Wilmuth's Admr. v. I. C. R. R. Co., 25 K. L. R. 671; Taaffee's Admr. v. L. & N. R. R. Co., 106 Ky. 535; L. & N. R. R. Co. v. Mulfinger's Admr., 26 Ky. L. R. 3; L. & N. R. Co. v. Logsdon's Admr., 26 Ky. L. R. 457; C. N. O. & T. P. Ry. Co. v. Curd, 28 Ky. L. R. 177; McCobis Admr. v. Maysville & Big Sandy R. R., Mason Circuit Court, decided Dec. 5, 1905; Louisville Water Works Co. v. Phillipp's Admr., Jecerson Circuit Court, decided Dec. 7, 1905.

OPINION BY JUDGE O'REAR—Affirming.

James H. Murphy, while walking along the railroad track, was struck and killed by one of the appellant's passenger trains in the town of Central City. This is a suit to recover damages for his death; it being alleged that the injury occurred through the negligent operation of the train. Central City is a town of the fifth class. Just what its population is is not shown, but from the record it may be gathered that it is a town of 2,000 or more people. Two railroads cross there, and it is a terminus of a division of appellant's road. Several mining towns or villages are in the same vicinity, and within from two to four miles. Appellant's railroad runs through the town, so that its line of road occupies, in part, what the public use as a street for many purposes. At the point where the injury occurred, which was in appellant's switchyard, it does not appear that there was a public street or highway, but it does appear that, notwithstanding it was used by the public, and had been for 15 years or longer, as a roadway by foot passengers, with the knowledge of the operatives of the trains. The use is shown to have been so extensive, constant, and continued as to raise a presumption of knowledge by the company that it was so used. The

train which struck Murphy was a heavy passenger train, known as the fast mail, and was running at from 25 to 30 miles an hour.  Murphy was a young man, about 30 years old, in full possession of his faculties, for aught that appears.  He was walking beside the track on the end of the ties, and meeting the train which struck him.  There is a conflict in the evidence whether the locomotive struck him in front or the rear of his body.  Appellant's witnesses who saw the accident (three in number) say it struck him in the front.  One witness for appellee who testified that he saw the accident, says decedent was standing with his side, "or rather his back," to the track, seemingly talking to some one on a locomotive which was standing on a siding some 10 or 12 feet away, and which was "popping off" steam.  The body showed that the ribs had been broken from the spine by the contusion, and there was a large bruise there.  The clothing of the deceased showed torn places corresponding with the lick in the rear of the right side.  All agree that he was struck by the pilot beam of the locomotive as it passed him.  He was hurled some 15 or 20 feet to the side and away from the track on which he had been walking.  The engineer says he saw Murphy when about 125 or 150 yards from him; that he was facing the train, and coming toward it in a fast walk or slow trot; that he supposed he would get out of the way in time until within 25 yards of him, when he realized he would not, and then the emergency brakes were applied and the alarm whistle sounded.  Of course, then the man had been struck.  The train ran its length (about 120 yards) before it was stopped.  He says it was stopped as soon as possible after the peril of the deceased was discovered.  There is some evidence that deceased was walking along with head down, apparently not noticing the coming train.  No

one testifies that deceased saw the train, or indicated by act that he was conscious of its proximity.

A motion for a peremptory instruction on behalf of the defendant was refused. It is argued that this was error upon the facts stated, it being assumed that Murphy was a trespasser on the track of appellant, to whom it owed no duty till his peril was discovered, and then only to do what was in its power thereafter to avoid injuring him. We do not think the peremptory instruction should have been granted. Appellant relies on the following cases, which it insists are conclusive of the principle contended for: Manning v. I. C. R. R. Co., 84 S. W. 565, 27 Ky. Law Rep. 142; Yates v. I. C. R. R. Co., 89 S. W. 161, 28 Ky. Law Rep. 75; L. H. & St. L. Ry. Co. v. Hathaway, 121 Ky.— 89 S. W. 724, 28 Ky. Law Rep. 628, 2 L. R. A. (N. S.) 498; Smith v. I. C. R. R. Co., 90 S. W. 254, 28 Ky. Law Rep. 724; L., H. & St. L. Ry. Co. v. Jolly, 90 S. W. 977, 28 Ky. Law Rep. 989; L. & N. R. R. Co. v. Daniel, 122 Ky. 256, 91 S. W. 691, 28 Ky. L. Rep. 1146, 3 L. R. A. (N. S.) 1190; L. & N. R. R. Co. v. Redmon, 122 Ky. 385, 91 S. W. 722, 28 Ky. L. Rep. 1293; M. & O. R. R. Co. v. Dowdy, 91 S. W. 709, 28 Ky. Law Rep. 1371; Johnson v. L. & N. R. R. Co., 122 Ky. 487, 91 S. W. 707, 29 Ky. Law Rep. 36; Beiser v. C. & O. Ry. Co., 92 S. W. 928, 29 Ky. Law Rep. 250; Ward's Adm'r v. I. C. R. R. Co., 56 S. W. 807, 22 Ky. Law Rep. 191; L. & N. R. R. Co. v. Molloy's Adm'r 121 Ky.—91 S. W. 685, 28 Ky. Law Rep. 1113; Gregory v. L. & N. R. R. Co. 79 S. W. 238, 25 Ky. Law Rep. 1986; Brown v. L. & N. R. R. Co., 97 Ky. 228, 17 Ky. L. R. 145, 30 S. W. 639.

There seems to be a misapprehension of the principles governing the cases cited, and a failure to note the distinguishing features of the one at bar. The cases cited are divisible into two classes, though really they all belong in principle to a single class.

The first division includes Manning v. I. C. R. R. Co., Brown v. L. & N. R. R. Co., Yates v. I. C. R. R. Co., L. & N. R. R. Co. v. Redmon, L. & N. R. R. Co. v. Molloy, and Gregory v. L. & N. R. R. Co. Each of those injuries was inflicted upon persons walking along or driving across the railroad track in or near villages or sparsely settled hamlets. The court applied to them the same principle as governs such cases where the injured person is walking along the railroad in the country. They were treated simply as trespassers, to whom no lookout duty was owed, and no duty at all till their peril was actually discovered by those operating the trains. L. H. & St. L. Ry. Co. v. Jolly, Smith v. I. C. R. R. Co., L., H. & St. L Ry. Co. v. Hathaway, M. & O. R. R. Co. v. Dowdy, and L. & N. R. R. Co. v. Redmon, were all cases arising in the country, except the latter, which, though in an in- corporated village, was on the company's inclosed right of way, and beyond the line of habitations within the village corporation. It was likened in the opinion to a rural case. Johnson v. L. & N. R. R. Co. was an injury in the private stockyards of the company, where the plaintiff had no right to be, and was not expected to be, and he was consequently treated as a trespasser. Beiser v. C. & O. Ry. Co. was an injury on an elevated bridge, and while in a large city, the principle of a rural trespasser was applied, because the trespass was positively forbidden by the railroad company, and there was not enough of it to differentiate it from a trespass in a sparsely settled locality. Ward's Case is mainly relied on. That injury occurred in a large city, in the yards of the company. There is nothing to show that anybody ever used that point as a footway. The decedent was held in the opinion to be an unexpected trespasser, who came to his death, so far as the evidence showed, entirely by his own inadvertence. Nothing was shown

to the effect that his presence was actually known to those operating the train, or that they had reason to expect his presence. L. & N. R. R. Co. v. Daniel, on this point, was treated in the same way. All these cases are reducible to the one principle, that a trespasser on a railroad track, at a point where his presence is neither known nor can be reasonably anticipated, need not be looked out for, and no duty is owed to him by the railroad company, except to keep from injuring him, if it reasonably can, after his presence and peril shall have been discovered.

These cases leave open the question whether a railroad company, whose tracks run through a populous community, and run along or across streets where from the nature of things any number of persons may reasonably be expected at any time, may run its trains through there at any rate of speed it chooses, and without regard to the expected presence of others. Appellant admits that it owed a "lookout duty" at the point where Murphy was struck. But is that all that the railroad company owed under such circumstances? It might do little good to keep a lookout on a train running at a high rate of speed, when, if the peril is seen, because of the rate of speed and weight of the train, it will be impossible to avoid the collision. The only advantage would be to give warning. We think the duty in such cases is to operate the train with the fact of the trespasser's presence in mind—that is, at a speed which has the train under control, and keeping such a lookout as will enable the operatives to give timely warnings of its approach, as well as to stop it in case of necessity before injury has been inflicted on the trespasser. Legislation has not regulated the speed of trains in such communities. Each case must rest till then upon its own facts. Whether the speed is so great as to amount to negligence will be a fact to be determined by the jury, for

the circumstances will necessarily vary, according to
the population, the use of the track for passage by
foot or vehicle travelers, the obstruction to the view,
and so forth. Fast trains are a necessity, but nobody
has the right to be in such a hurry as to run over and
kill people who happen to get in their way, and who
have the right to be, or are known to be, at the point
of collision. No requirement of commerce can justify
such a rule, nor has such an inhuman doctrine any
place in our laws. L. & N. R. R. Co. v. Lowe, 118 Ky.
260, 25 Ky. L. R. 2317, 80 S. W. 768, 65 L. R. A. 122,
and L. & N. R. R. Co v. Daniel, supra, state the rule to
the contrary of appellant's contention. If the railroad
company knows that the public habitually uses its
tracks and right of way in a populous community as
a foot passway, so that it knows that at any moment
people may be expected to be found thereon, such
knowledge is treated as equivalent to seeing them
there, and their presence must be taken into consid-
eration by the train operatives in the movement of
their trains. Such foot passengers may be in law
only trespassers or licensees. They may, indeed, have
no legal right to be there or to use the track; but the
question comes back, if they are there, and known
to be there, what, then, is the company's duty as
to running its trains? It is admitted that the com-
pany has the superior right—nay, maybe has the ex-
clusive right—to the tracks, and that some way
ought to be provided for keeping trespassers off them
altogether. But the fact remains, the tracks are open,
inviting for easy travel, are traveled constantly, and
so known to be by the company. The difference be-
tween the cases in the country and those in thickly
settled towns and cities is one of practical materiality.
In the country there are occasional sporadic uses of
the tracks by the foot passengers, but they are com-
paratively rare. To compel the railroad trains to

creep along under full control, in anticipation of
what probably would not occur, viz., the meeting or
overtaking of a stray trespasser, would not be rea-
sonable, because most likely wholly unnecessary.  But
in populous communities the probabilities are all the
other way.  The foot passengers, from long habit of
use, which are known to and suffered by the company,
may reasonably be expected at all times, and in any
number.  It is more than a mere probability—it is
a reasonable certainty—that they will be found there.
The company should no more shut its eyes to such
a probability within its knowledge, than to the ac-
tual fact of the presence when known.  We will not
say that to dash at uncontrollable speed through such
a town, where people are known to be using the
tracks for passing, is not negligence.  Let the jury
say whether it is.  The trial court did not submit this
phase of the case to the jury.  On the contrary, it was
assumed that the company had the right to run its
trains at that point at any rate of speed it desired,
but that it must keep a look-out for trespassers,
and if those in charge of the train saw, or by the
erercise of ordinary care could have seen, decedent
in time to have avoided injuring him, it was their
duty to do so.  There are cases which hold that the
rate of speed in towns may or may not be negligent,
without respect to an ordinance; and it is held that,
where tresspassers are on the railroad track, their
presence being unknown, the rate of speed is never
negligent as to them, because no duty whatever was
then owed to them by the railroad company.  But we
think the correlative principle must apply, that where
there is knowledge of the presence of trespassers or
licensees, or, what is equivalent, notice of their ex-
pected and probable presence, the rate of speed may
be negligent as to them, because there is then a duty
to them, viz., to look out for them, and take care not

to run over or injure them.

Appellee joined the engineer and conductor as co-defendants with the railroad company, charging that it was by their negligence in operating the train that defendant was killed. There was no evidence of negligence against the conductor. The court instructed the jury to find for 'him. As to the engineer, the court submitted the case to the jury upon the same instructions as were given as to the railroad company. The court told the jury, in effect, that it might find a verdict against them jointly or separately. Notwithstanding, the jury returned this verdict only: "We, the jury, find for the plaintiff, and fix the damages against the defendant, I. C. R. R. Co., at three thousand dollars."

It is argued that the jury, through some prejudice against the corporation, refused to obey the court's instructions, and from this circumstance it is claimed that the verdict is unsupported by the evidence, because, if there was not enough evidence to justify the jury in their own opinion to find a verdict against the engineer, of necessity, there was also a lack of evidence to justify a verdict against his principal, who could be held responsible only upon his negligence. Whether a verdict is flagrantly against the evidence is a matter that this court will determine for itself, without regard to what the jury may have thought. We think there was evidence of actionable negligence proven against the company, and that on the showing of its own witnesses. It lays mainly in the rate of speed of the train under the circumstances proven. But that phase, as we have seen, was not submitted to the jury, and therefore presumably was not taken into consideration by them. But, aside from that, we cannot say that the physical facts do not sustain appellee's claim that the deceased was standing with his side or back to the approaching

train, and in view of the engineer, for a greater distance than was required for him to stop or slow up, and the jury may have found that the man, though facing the train, was walking with his head down, and did not see it because it failed to give adequate and reasonable warning of its approach. Whether the engineer had reason to believe Murphy was aware of the train's approach, and would quit the track in time to avoid the collision, was a question of fact for the jury. The engineer, by sounding his whistle after he saw Murphy on the track, might have aroused him to a sense of his danger, and saved him. He owed this duty to the man, it may well have appeared to the jury. We need not discredit the engineer's statements of what he saw. Admitting them, it was clearly for the jury to say whether he then acted as an ordinarily prudent man should have acted under the circumstances to avoid the collision. We are so clearly convinced that there was actionable negligence by the company in the manner of the running of the train at that point, and under the circumstances proven, that the verdict of the jury, though based on less substantial grounds, ought not to be disturbed.

It does not follow that the same verdict need have been rendered against the company and its engineer. We can think of cases where possibly the engineer ought to be held to the stricter account, and vice versa; but let that be as it may, if the plaintiff is entitled to his verdict against two tortfeasors, but the jury are able to agree only as to one of them, and gives a verdict accordingly, we know of no law that prevents the plaintiff from having at least what the jury has given him. If he failed to get the verdict against another also liable, the plaintiff may be aggrieved, but not the defendant.

As to the effect of the action of the jury in failing to respond to the court's instructions as to the conduct-

or's liability, perhaps the conductor is aggrieved, but that cannot avail the railroad company.

The instructions are criticised by appellant. They are really more favorable to appellant than it was entitled to, in that they failed to submit the question of negligence growing out of the rate of speed of the train in the town where the accident occurred; otherwise, the instructions are without fault.

The judgment should be affirmed.

Petition for rehearing by appellant overruled.