CASE 4.—ACTION BY SAMUEL FRANCE'S ADMX. AGAINST THE ILLINOIS CENTRAL R. R. CO. AND ANOTHER FOR CAUSING THE DEATH OF PLAINTIFF'S INTESTATE.—October 22.

## Ill. Cent. R. R. Co. v. France's Admx.

Appeal from Ohio Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for plaintiff. Defendant appeals.—Reversed.

1. Railroads—Operation of Trains—Approach to Public Crossings—Signals.—Trainmen must give notice of the approach of trains to public crossings and when passing through populous communities, where they ought to expect the presence of

Ill. Cent. R. R. Co., &c., v. France's Admx.

people on the right of way, and a failure to do so is action-able negligence.

2. Same—Negligence—Speed of Train—Question for Jury.—Whether the speed of a train through a populous community, where the tracks are daily used by numerous persons, is negligence, is for the jury.

3. Evidence—Opinion Evidence—Speed of Trains—Competency of Witnesses.—Witnesses, without qualifying as experts, may testify that a train ran as fast as it could to stay on the tracks, and from 50 to 60 miles an hour.

4. Railroads—Death of Person on Track—Evidence- -Admissibil-ity.—In an action for the death of a person struck by a train, evidence that the switchyard, side tracks, and main line, where the accident happened, were frequently used at all times of the day by persons living in the locality, was com-petent to show that the switchyard, side tracks, and main line were in constant use by the people in the vicinity in passing from one side of the track to the other.

5. Appeal and Error—Harmless Error—Instructions.—In an action for the death of one struck while crossing a track, refusal to allow the engineer of the train to testify that the schedule required a speed of 45 to 50 miles an hour at the place of the accident was harmless error, where such evi-dence would have been merely in accord with the weight of the testimony of the other witnesses in the case.

6. Railroads—Persons on Tracks—Injuries—Speed of Trains—Evidence—Admissibility.—The schedule rate of a train is admissible on the issue of its rate of speed; the value of the evidence being dependent on the condition of the engine, the weight of the train, the conditions of the track, etc.

7. Courts—Previous Decisions as Precedents—Instructions.—The fact that the instructions given in one case where approved on appeal does not justify the conclusion that they are appli-cable to another case, for the instructions in each case must present the law as warranted by the evidence.

8. Railroads—Injury to Persons on Track—Misleading Instruc-tions.—In an action for the death of a person struck by a train at a point where numerous persons daily used the track, an instruction which defines the duty of the company to the public, but which fails to define the duties which decedent owed to himself, is insufficient, because leading the jury to conclude that decedent could go on the tracks at any time and place, and that, if the company was derelict in the discharge of any of the enumerated duties, a recovery could be had, though decedent exercised no care for his own safety.

9. Same.—An instruction, in an action for the death of a person struck by a train at a point where numerous persons daily used the tracks. which authorizes a recovery if the engineer failed to give "timely or sufficient warning" of the train's approach, is not erroneous for using the words "timely" and "sufficient," for they are words of general import, in common use and the instruction properly leaves to the jury to determine whether or not the trainmen exercised reasonable care.

10 Same—Care required in Operation of Trains.—The duty of trainmen is not limited to a compliance with the statute requiring the giving of signals on the approach of trains to crossings; but they must use reasonable care to avoid injury to any one who may be on the track and such duty increases as the liability to come into contact with persons passing on the track increases .

11 Trial — Instructions — Construction Together — Where the court, in an action for the death of a person struck by a train, charged that there could be no recovery if decedent was negligent in going on the track. and that but for such negligence the accident would not have occurred, an instruction authorizing a recovery if the engineer failed to give timely warning of the train's approach was not erroneous for failing to embody the idea that decedent's negligence would defeat a recovery. since the instructions must be considered together as a whole, and if, when so read, they present the issues, they are sufficient.

12. Same—Support in Evidence—Necessity.—Where, in an action for the death of a person struck by a train, the testimony of the engineer that when decedent. came on the track the engine was so close to him that it was impossible to avoid the accident was not contradicted, an instruction authorizing a recovery if the engineer failed to use ordinary care after seeing the peril of decedent, notwithstanding his contributory negligence, was erroneous.

H. P. TAYLOR for appellants.

J. M. DICKERSON, TRABUE, DOOLAN & COX of counsel.

POINTS AND AUTHORITIES.

1. Intestate, with the knowledge of danger, went upon defendant's switchyard and tracks, not at a crossing, or in populous town, or city. and was a trespasser. (L. & N. R. R. v. Logsden, 81 S. W. 657; McDermott v. Ky. Central R. R. Co., 93 Ky. 408, 20 S.

Ill. Cent. R. R. Co., &c., v. France's Admx.

W. 880; L. & N. R. R. Co. v. Webb, 99 Ky. 348, 35 S. W. 1120; Becker v. L. & N. R. R. Co., 110 Ky. 478; Goodman's Admr. v. L. & N. R. R. Co., 77 S. W. 174, 25 Ky. Law Rep. 1089, 63 L. R. A. 627; Gressom's Admr. v. L. & N. R. R. Co., 15 Ky. Law Rep. 599; L. & N. v. Smetzer, 94 Ky. 424; I. C. R. R. Co. v. Dick, 91 Ky. 434; L. & N. R. R. Co. v. Hocker, 111 Ky. 707; L. & N. R. R. Co. v. Vittito, 19 Ky. Law Rep. 612; Ky. Cent. R. R. Co. v. Gastineau, 83 Ky. 122; Ward v. I. C. R. R. Co., 22 Ky. Law Rep. 191; I. C. R. R. Co. v. Gregory, 25 Ky. Law Rep. 1988; Rosenberry v. N. N. & M. V. R. R. Co., 19 Ky. Law Rep. 194; Chinn's Admr. v. C. & O. R. R. Co., 24 Ky. Law Rep. 2350, 74 S. W. 215; McCabe v. M. & B. R. R. Co., 26 Ky. Law Rep. 532; Jackson's Admr. v. L. & N. R. R. Co., 20 Ky. Law Rep. 309; L. & N. R. R. Co. v. Popp, 96 Ky. 99; Willmuth's Admr. v. I. C. R. R. Co., 25 Ky. Law Rep. 671, 76 S. W. 192; Brown's Admr. v. L. & N. R. R. Co., 97 Ky. 228.)

2. Intestate was not on a public crossing, and the railroad company owed intestate no duty at the time of the injury complained of. (Redmon's Admr. v. L. & N. R. R. Co., 28 Ky. Law Rep. 1293; Brown's Admr. v. L. & N. R. R. Co., 97 Ky. 228.)

3. Without experience and observation as to the speed and time required to stop a train, witnesses' testimony was incompetent. (Vanarsdale's Admr. v. L. & N. R. R. Co., 23 Ky. Law Rep. 1666; I. C. R. R. Co. v. Johnson, 97 S. W. 745; I. C. R. R. Co. v. Smith, 110 Ky. 201.)

4. Evidence of the use of the switchyard and track by sporadic trespasser was incompetent. (I. C. R. R. Co. v. Johnson, 97 S. W. 745.)

5. Warning due persons at crossings does not apply when off of, or near crossings. (Redmon's Admr. v. L. & N. R. R. Co., 28 Ky. Law Rep. 1293.)

6. Schedule rate of speed was competent.

7. Court's instructions 1 and 2 denied the right to recover on account of contributory negligence. (Goodman's Admr. v. L. & N. R. R. Co., 77 S. W. 174, 25 Ky. Law Rep. 1086, 10 Ky. Law Rep. 777; L. & N. R. R. Co. v. McCoy, 81 Ky. 403.)

8. Instruction No. 3 is erroneous because it limits the right to recover for contributory negligence. (Goodman's Admr. v. L. & N. R. R. Co., 77 S. W. 174, 25 Ky. Law Rep. 1086, 10 Ky. Law Rep. 777; L. & N. R. R. Co. v. McCoy, 81 Ky. 403.)

9. There is no evidence of negligence, the verdict is overwhelmed by the evidence, palpably against the evidence, and new trial should be awarded. (L. & E. Mail Co. v. Gilland, 24 Ky. Law Rep. 2082; Triple-State Natural Gas Co. v. Wellman, 24 Ky. Law Rep. 851.)

10. Although there is a scintilla of evidence properly taking the

Ill. Cent. R. R. Co., &c., v. France's Admx.

case to a jury, it does not follow by "any means" that the trial court should not award a new trial. (Hurt v. L. & N. R. R. Co., 116 Ky. 553; L. & N. R. R. Co. v. Hall, 24 Ky. Law Rep. 2487.)

TRABUE, DOOLAN & COX for appellants.

J. M. DICKENSON, H. P. Taylor of counsel.

### POINTS AND AUTHORITIES.

1. France's own negligence was the proximate cause of his injury. (I. C. R. R. Co. v. Willis' Admr., 29 Ky. Law Rep. 1184, 97 S. W. 21; Hummer's Extx. v. L. & N., 32 Ky. Law Rep. ——, 108 S. W. 885; L. & N. R. R. Co. v. v. Gilmore's Admr., decided April 16, 1908; L. & N. R. R. Co. v. Lawler, 32 Ky. Law Rep. 994.)

2. Review of Murphy, Rader and Taylor cases, and Murphy case distinguished by this court in I. C. R. R. Co. v. Johnson, 30 Ky. Law Rep. 142, 97 S. W. 745, and in C. & O. Ry. Co. v. Nipp, &c., 30 Ky. Law Rep. 1132, 100 S. W. 246.

3. The scintilla rule does not justify the court in upholding a verdict against the overwhelming weight of the evidence. (L. & N. R. R. Co. v. Hall, 115 Ky. 567; Hurt v. L. & N. R. R. Co., 116 Ky. 545; C., N. I. & T. P. Ry. Co. v. Zachary, &c., 32 Ky. Law Rep. 680, 106 S. W. 842.)

4. The instructions in this case are incorrect. (Hummer, &c., v. L. & N. R. R. Co., 32 Ky. Law Rep. 108 S. W. 885.)

BELCHER & SPARKS for appellee.

BARNES & ANDERSON of counsel.

We contend that the proof shows the engineer was not only guilty of ordinary negligence, but gross negligence in every particular. His failure to keep a lookout, to blow the whistle and ring the bell while approaching the crossing, together with the excessive rate of speed at which he was drawing his engine, all go to show that he was reckless of human life. As Judge O'Rear said in the Murphy case: "Nobody has a right to be in such a hurry as to run over and kill people who happen to get in their way and who have a right to be or known to be at the point of collision. No requirement of commerce can justify such a rule, nor has such inhuman doctrine any place in our law."

## AUTHORITIES.

Illinois Cent. R. R. Co. v. Murphy's Admr., 97 S. W. 729; Rader's Admx. v. L. & N. R. R. Co., 104 S. W. 774; L. & N. R. R. Co. v. Taylor's Admr., 104 S. W. 776.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

While attempting to cross the tracks of appellant company, Samuel France was struck by one of defendant's fast north-bound trains and killed. His administratrix instituted suit against the railroad company and the engineer in charge of the train to recover damages for his killing, and alleged that his death was due to its careless, reckless, and negligent operation. The engineer and the company answered, denying the allegations of the petition, and pleaded contributory negligence. This latter plea was traversed in the reply, and on the issues thus joined a trial was had, which resulted in a verdict in favor of appellee for $3,600. To reverse the judgment predicated on that verdict this appeal is prosecuted.

Several grounds are relied upon for reversal. First, that the court erred in refusing to give a peremptory instruction to find for the defendant; second, that the court erred in admitting incompetent evidence and excluding competent evidence from the consideration of the jury; third, that the jury was not properly instructed; and, fourth, that the verdict is against the evidence and should be set aside on that account.

Deceased was a coal miner living some distance east of McHenry, and had been engaged in mining coal from a mine which lay upon the west side of the tracks of appellant company, adjoining the town of McHenry. Near the place where he was killed there

is a large coal chute adjoining the railroad right of way. A creek, known as "Renders Creek," or "Copperas Branch," runs through the town almost parallel with the railroad tracks. At the south end of the coal chute there is a footbridge over this creek, which is used by the miners in going to and from the mine in which deceased had been working for some time prior to his death, and also by citizens living in that neighborhood, whose business took them from one side of the railroad tracks to the other. At the time deceased was killed the mine was not running. About 2:30 o'clock in the afternoon he and his son started from their home across the railroad tracks of the appellant company to the mine to get some tools which they had left there. When they reached the tracks they found some empty box cars standing on one of the side tracks. They passed around the south end of these cars and had started in a diagonal direction across the main track when deceased was struck by the fast train and killed.

The proof introduced is to the effect that, when the mine was running, from 200 to 300 people passed back and forth over the tracks and across the footbridge in question each day, and when the mine was not running fewer, though a considerable number of people, passed over the footbridge and tracks of appellant company each day. There was no well-defined passway across the railroad tracks; but it seems that persons were in the habit of crossing same at such point as most suited their convenience. This condition had continued for some time. McHenry is a town of some 550 inhabitants, in the center of a mining district, and that may be said to be a thickly settled community. From the testimony of all of the witnesses the train was running at from 45 to 50 miles

an hour.  There is a conflict as to whether the bell was ringing or the statutory signals given, though the decided weight of the testimony is to the effect that the signals were given for the crossing and the semaphore.  No witness testifies who does not say that the train whistled at a point before it reached the place where decedent was struck, though some of them state that it whistled for a crossing some distance from the town, and not for the crossing at the edge of town, where it should have whistled.

Deceased's eyesight and hearing are shown to have been good.  Whether he saw or heard the approach of the train which killed him is left a matter of conjecture, for the reason that he was instantly killed, and there is no evidence from anything he said just prior to his death indicating that he knew the train was approaching.  His son testifies that when they left home they stopped at the house of a friend to secure a lantern, and started from there across to the mine; that when they reached the railroad they found the side track blocked by one or two box cars, which were standing there; that they then turned and went around the end of the box cars and started diagonally, in a fast walk or trot, across the tracks; that at this time he was laughing and talking with his father, and that his father had his head turned looking back at him; that he does not know whether his father saw the train or not; that as his father stepped upon the track he discovered the presence of the approaching train, and called to and grabbed at his father; that his father continued across the tracks, while he jumped back to avoid being struck.  His father was knocked some distance by the engine, and death was almost instantaneous.  Other witnesses were introduced who corroborated deceased's son as to the direction in

which they were going at the time he was killed and also as to the speed with which they were traveling.

The engineer testifies that he was running the train at about 45 miles an hour; that when he discovered the deceased he was not more than 125 to 150 feet away from him, and that when deceased stepped upon the track he was scarcely more than one-half of this distance from him; that at this time there was nothing in his power that could have been done to prevent the injury. On this testimony appellant asked for a peremptory instruction, and complains because it was not given.

It is the duty of those in charge of a railroad train to give notice of its approach to public crossings and when passing through towns and thickly settled communities, where they have a right to expect the presence of people along and upon its right of way, and their failure to do so has been repeatedly held to be actionable negligence, for which the company must respond in damages to those who, without fault, are injured by reason thereof. In the case at bar there is a conflict in the testimony as to whether or not signals were given of the train's approach. The weight of the evidence is that they were, but there is some evidence that no signals were given, and that by reason thereof deceased was not warned. The train is shown to have been running at a high rate of speed through a populous community, where the tracks of the appellant company were crossed by a large number of persons each day, and, under the rule announced in the case of I. C. R. R. Co. v. Murphy, 123 Ky. 787, 97 S. W. 729, 30 Ky. Law Rep. 93, 11 L. R. A. (N. S.) 352, it was a question for the jury, under these facts and circumstances, to say whether the rate of speed at which the train was traveling was an act

of negligence on the part of the defendant company. It was proper that the motion for a peremptory instruction should be denied, and the court did not err in so doing.

The testimony which was admitted over the objection of appellant, and of which it now complains, is that certain witnesses were asked how fast the train was going, and that they were permitted to answer (without first qualifying themselves as experts) that it was running "as fast as it could to stay on the tracks," and "from 50 to 60 miles an hour." That was a matter of judgment, and we think it proper that the court permitted witnesses to testify what, in their opinion, was the rate of speed. It simply amounted to the witness testifying that the train was running very rapidly, or as rapidly as they had ever seen or known a train to run.

Appellant also complains because these same witnesses were permitted to testify that the switchyard, side tracks, and the main line of appellant's road, where deceased was killed, were frequently used at all times of day by persons living in that locality. We think this evidence was entirely competent for the purpose for which it was introduced. By evidence of this character plaintiff sought to show that the switchyard, side tracks, and main line of the appellant company were in constant use by the citizens of the town and vicinity, in passing from one side of the track to the other. Such use could only be shown in the manner in which plaintiff attempted to show it. Defendant offered to show by its engineer what the schedule rate of the train's speed was at the time and place of the accident. The court refused to permit this to be done, and held that the material point in the case was, not what the schedule rate of speed was, but what

the actual rate was. If permitted to answer, however, he would have testified that it was from 45 to 50 miles an hour; and this is in accord with what the testimony of the majority of the witnesses in the case say, so that appellant was not prejudiced by this ruling. The fact that the schedule rate was 45 miles an hour would be a circumstance which the jury might consider as bearing on its rate of speed. The value of such evidence is slight, because dependent upon many circumstances, such as the condition of the engine, the weight of the load which it pulls, as well as condition of the tracks, weather, etc. Still the schedule showing the rate of speed may be admitted in evidence for what it is worth.

Appellant objects to all of the instructions given by the court on the ground that they do not fairly present the law of the case. It is insisted that instruction No. 1 is faulty in that it authorized a recovery if the engineer in charge of the train failed to give timely or sufficient warning of the train's approach; that the use of the word "timely," without any explanation as to exactly what precaution the railroad company should have taken, and the use of the word "sufficient" in the same way, left the jury to speculate, without any standard by which to measure the alleged negligent acts; that under this instruction the jury might have believed, and so found, that it was the duty of the defendant to stop the train, while under the facts it was impossible to do so in time to prevent the injury after deceased's peril was discovered; that the instruction is likewise faulty in that no regard is had to the plea of contributory negligence, which, if supported by the evidence, was a complete defense; that each instruction should have presented this idea, either by having it embodied in the instruction, or by

reference to the instruction in which this plea of defendant was presented; that the words "sufficient warning" are too indefinite, in that they gave the jury the right to judge and determine what warnings were sufficient, whereas the instruction should have limited them to a determination of the question as to whether or not the statutory warnings of the train's approach were given. The same objections that are urged to instruction No. 1 are urged to instruction No. 2. The further complaint is made of this instruction that it permits a recovery on the part of the plaintiff without any regard to his contributory negligence. The objection to instruction No. 3 is that it is predicated upon the idea that defendant was guilty of gross negligence, when there was no evidence that tended to show gross negligence; that, as given, the instruction had the effect of placing the burden upon the defendant of showing that, after those in charge of the train discovered deceased's peril, they were guilty of no negligence, whereas it is urged that the burden should have been cast upon the plaintiff to show that they were guilty of negligence after discovering the peril of deceased.

Appellee's answer to these objections is that these identical instructions were approved in the case of I. C. R. R. Co. v. Murphy, 123 Ky. 787, 97 S. W. 729, 30 Ky. Law Rep. 93, 11 L. R. A. (N. S.) 352, and that, therefore, they are not subject to criticism, and, having been approved in that case by this court, they are now the law, which should be recognized and given full credit as such. To this latter conclusion we can not subscribe our unqualified approval. The fact that the instructions were given in another case, and on appeal here approved, does not by any means justify the conclusion that they are applicable to the case at

bar. The facts in the two cases, while similar in some respects, are very dissimilar in others, and the instructions in each particular case must present the law of the case as warranted by the facts proven. These instructions are correct as far as they go, but they failed to present to the jury the duty which deceased owed to himself for his own safety when attempting to pass over the tracks of the defendant company, and, while the instructions given set out in detail the duty which the railroad company owed to the public as to rate of speed, signals, lookout duty, etc., in passing through populous communities, they failed to define the duties which the decedent owed to himself for his own safety under similar circumstances, and the failure to present this idea to the jury left it to conclude, as it naturally would, in the absence of any such instruction, that the decedent could go upon the tracks of the appellant company at any time and place he chose, and, if the company was shown to have been derelict in the discharge of any of the enumerated duties which it owed to the public at such time and on such occasion, then a recovery could be had, even though the deceased had exercised no care whatever for his own personal safety, and his death may have resulted directly from this negligence on his part. Southern Railway Co. in Ky. v. Winchester's Exor., 105 S. W. 167, 32 Ky. Law Rep. 19, 127 Ky. 144.

The objection to the use of the words "timely" and "sufficient" warning in instructions 1 and 2 is not well taken. These are words of general import, in common use, and, as applied in these instruction, have been frequently approved. There can be no hard and fast rule laid down as to what is a "timely" or a "sufficient" warning; but the jury must be left in each case to determine from the evidence in that case

whether or not those in charge of the train exercised reasonable care in its operation to avoid injury to the public. It is true that there are certain statutory signals which must be given by trains in approaching crossings, but the duty of those in charge of trains is not limited to a compliance with the statutory provisions; but they must, in addition to the observance of such provisions as to signals, etc., at all times use reasonable care to avoid injury to any one who may be upon the track, and this degree of care, of course, covers a very wide range. In the country and very sparsely settled communities it is very slight, while at public crossings, in towns and thickly populated communities, it is greatly increased. It may be said that the degree of care imposed upon those operating a train increases exactly in the ratio as the liability to come into contact with persons passing upon, along, and over the track increases, so that what would be reasonable care or "timely" warning in one locality or under one state of facts might be neither reasonable nor "timely" in another locality and under a different state of facts. Therefore the court very wisely left to the determination of the jury this question.

Appellant also complains because the court did not, in instruction No. 1, say to the jury that if they found the company guilty of negligence, as therein defined, they should, nevertheless, find in its favor if they should further find that deceased himself was negligent in going upon the track, and that but for such negligence on his part the accident would not have occurred. This point would be well taken if it was necessary to embody the whole law in one instruction. Such, however, is not the rule. The law can be much more clearly given and made more easily understood by being set out in a series of instructions.

As the idea which appellant insists should have been embodied in instructions 1 and 2 was fully and completely expressed in instruction 3, appellant has no substantial ground of complaint. The instructions must be read and considered as a whole, and when each is so read in connection with the others, if they present plaintiff's case and defendant's defense as set up in their respctive pleadings and supported by proof, the ends of the law have been complied with.

Instruction No. 3 is faulty in that there was no proof which authorized the qualification which the court added thereto. The engineer testified that when deceased came upon the track the engine was so close to him that it was impossible for anything to have been done to avoid injuring him. There was no proof whatever which tended to contradict this statement of the engineer. Hence the qualifying clause: "Unless the jury should further believe from the evidence that the defendant's engineer, Theodore Shelton, alias 'Bud' Shelton, on said occasion saw the peril in which said decedent's negligence, if any, had placed him, and that said engineer thereafter failed to use ordinary care to give the intestate warning of the approach of said train, then and in that event the law is for the plaintiff, notwithstanding the plaintiff may have been guilty of contributory negligence"—should not have been added to this instruction. Instruction No. 3, with this clause omitted, properly presented the defendant's plea of contributory negligence on the part of the decedent, as warranted by the proof.

As there must be another trial of this case, we expressly refrain from passing upon the complaint that the verdict is against the weight of the evidence.

For the reasons indicated, the judgment is reversed,

and cause remanded for another trial consistent with this opinion.

CASE 5.—JOHN M. CARTER FILED EXCEPTIONS TO THE CONFIRMATION OF A SALE TO HIM BY THE ADMINISTRATOR OF O. J. CROW, DECEASED, IN THE SETTLEMENT OF DECEDENT'S ESTATE— October 22.