# Watson's Administrator v. Chesapeake & Ohio Railway Company, et al.

(Decided May 17, 1916.)

## Appeal from Greenup Circuit Court.

1. Negligence—Nature and Elements.—Negligence is the failure to perform a duty, and if there is not any duty, there is not any negligence.

2. Railroads—Use of Tracks by Public—Crossings—Lookout Duty.—. The operation of the rule, which holds, that where the public generally, with the knowledge and acquiescence of a railroad company, have continually used the tracks for a long period of time, the presence of persons upon the tracks where it is so used must be anticipated, and it owes to them a lookout duty, is confined to public crossings where people have a right to be and go, or to the streets of towns, cities and to populous communities, where large numbers of people used the streets as they have a right to do, thereby putting upon the railroad company the duty of anticipating their presence and the use of ordinary care to avoid injuring them.

3. Railroads—Right of Way—Use of.—A railroad company may have the exclusive use of its right of way within the limits of a town or city, where it is not immediately paralleled by streets, highways or alleys, and this is especially true if the right of way is enclosed to prevent its use by the public.

4. Negligence—Submission to Jury.—If there is not any evidence offered by a plaintiff, which tends to prove actionable negligence upon the part of the defendant, there is nothing to submit to the jury.

J. B. BENNETT, J. B. WILHOIT and R. S. DINKLE for appellant.

WORTHINGTON, COCHRAN & BROWNING and PROCTOR K. MALIN for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This action was instituted by the appellant, the administrator of Eva Watson, deceased, against the appellees, Chesapeake & Ohio Railway Company and William Lewis, a locomotive engineer in the employment of the appellee, railway company, to recover the damages sustained by the estate of decedent because of the destruction of her life by appellees. The cause of action alleged and relied upon was the alleged negligence of appellees in running a fast passenger train against the deceased, who was walking upon one of the tracks of the

C. & O. Ry. Co., in the outskirts of the town of Fullerton, and thereby causing her instant death. The appellees denied that they were guilty of any negligence, which resulted in her death, and further, alleged that she was guilty of contributory negligence, without which she would not have lost her life.

After all the evidence had been heard, the court sustained a motion to peremptorily instruct the jury to return a verdict for appellees, which was done, and a judgment entered thereon adjudging that the petition be dismissed.

From the judgment this appeal has been prosecuted, and the appellant insists that the court was in error in directing a verdict for appellees.

The town of Fullerton is an unincorporated town situated upon the line of the Chesapeake & Ohio Railway Company in Greenup county, and contains four or five hundred inhabitants. The station of the railroad is located upon the eastern side of the town. The railroad tracks at this place, extend eastwardly and westwardly, and there are two tracks which lie parallel to each other. About two hundred and sixty feet east of the station, a way, which is called Harrison street, extends across the railroad tracks, at right angles to the tracks. This street is about fifty feet in width, and the north end of it leads in the direction of one of the ferries across the Ohio river. Toward the south Harrison street, at a distance of several hundred feet from the railroad tracks, connects with a public road, which extends in a northeast direction from that point, and as it goes grows further away from the railroad tracks. On that part of Harrison street, which is situated north of the railroad tracks, there are eight houses, an equal number of which front the street on each side. The house on the east side of the street, which is nearest to the fence enclosing the railroad right of way, is about one hundred feet from the fence. On that part of Harrison street which is south of its crossing over the railroad tracks there are twelve houses, six upon each side, and each of these front upon the street. East of Harrison street and south of the railroad right of way and parallel with Harrison street, there are two short streets, which extend from the railroad right of way to the public road. Upon these short streets and near to them there are fourteen buildings, which front upon these streets or the public road

to the south of them. The greater number of these buildings are dwellings, but several are barns and abandoned houses, and one is a church, which is immediately upon the public road. To the south of the public road there are nine buildings, which front upon the public road. Commencing at a point about twelve hundred feet east of Harrison street, upon the public road, there are situated and fronting upon the road, seventeen other buildings, the greater number of which are dwellings, but these houses are separated from the railroad right of way by several hundred feet, in width, of enclosed land. From Harrison street, going toward the east and upon the south side of the railroad right of way, there is no dwelling nor business house which fronts to the railroad right of way, and except these unoccupied buildings, and which are not dwellings, and which are within four or five hundred feet of Harrison street, there are not any buildings in close proximity to the right-of-way of the railroad. Upon the north side of the railroad right-of-way, from Harrison street going eastward, there are not any buildings of any character, until a small hamlet called Morton's Addition, is reached, which is from three-fourths of a mile to a mile from the Harrison street crossing and contains sixteen or eighteen buildings. The town of Fullerton seems to be chiefly located to the west of the railroad station. The railroad right-of-way is enclosed upon each side by a wire fence, which commences immediately at the eastern line of Harrison street and extends from thence on toward the east, at least as far as Morton's Addition, and beyond this the evidence does not show how it is. Between forty and fifty feet to the east of Harrison street, a cattle guard extends across both tracks of the railroad, and is connected at the ends by wings to the fence upon either side of the right-of-way. From the cattle guards, to the east, the railroad tracks are constructed upon a fill, which extends from the guards for a distance of about twelve hundred feet. Near the center of this distance the fill is about fifteen feet in height. The public travel up and down Harrison street and over the railroad tracks at the crossing of the tracks over Harrison street is considerable, and along the tracks or near to them to the westward of Harrison street and about the station. There was not any sidewalk or walking way of any kind upon the railroad right-of-way, to the east-

ward of Harrison street, but sometimes the people who lived at Morton's Addition would, when coming into Fullerton or going to the ferry near Fullerton, walk along the tracks of the railroad and pass over the cattle guards. At times, some of the people who lived to the south of the railroad right-of-way and between it and the county road, getting through or over the wire fence which enclosed the right-of-way upon that side, would then get upon and walk along the railroad tracks and pass the cattle guards and reach Harrison street in that way. The number of persons who used the railroad tracks longitudinally as a walking way at the point where the cattle guards are situated, according to the various estimates made by the witnesses, were from fifty to one hundred and twenty-five persons per day. The cross-examination of these witnesses, however, shows that these numbers are grossly exaggerated.

The decedent, Eva Watson, was a bright girl, between fifteen and sixteen years of age, and resided with her parents in Morton's Addition. The day upon which she unfortunately lost her life, she was at the post office in Fullerton, which is situated near the railroad station, and was accompanied by her little sister, who was only about six years of age. From the post office they went to the store of a merchant, which is situated upon the west side of Harrison street, and between the railroad and the public road. From the storehouse they proceeded to the railroad crossing over Harrison street, and just at the time they arrived at the crossing a freight train, which was composed of an engine and three cars, was moving very slowly over the east bound track, and the engine was upon the crossing. The decedent and her sister ran across the track in front of the engine, thus passing over the east bound track and got upon the track over which the west bound trains operated, and then walked up this track in the direction of the cattle guards. Just, at this time, a fast passenger train was coming from the east over the track upon which the decedent was walking, and when it arrived at the whistling post for the station and crossing, which was eleven hundred and thirty-four feet east of the cattle guard, the ordinary signals of its approach were given, and these signals were heard by all the witnesses. Immediately following the signals given for the crossing and station, a succession of signals were heard, which con-

sisted of short, sharp blasts from the engine whistle, and which were recognized as the signals when one is discovered to be upon the track before the engine, and these signals were continued until the engine reached the cattle guards. The decedent continued to walk forward meeting the train, or was standing upon the cattle guard when she was struck by the onrushing train and instantly killed. The train stopped with the last coach about the center of the station, or about three hundred and fifty feet west of the cattle guards. In the meantime the engine which was moving the freight cars had pulled up to and passed the cattle guards, and stopped with the second car behind the engine over the cattle guard, and was standing at that place when the other train reached the cattle guards and struck the decedent. The decedent, for some unaccountable reason, evidently was not attracted by the repeated signals given by the oncoming train, and did not observe its coming, although she was walking with her face directly toward it. Probably the train upon the track so engrossed her attention that she neither heard the signals nor saw the train which was coming to meet her, and which seemed to be doing everything possible to attract her attention.

The engineer testified that the train consisted of an engine and five coaches; that when he arrived at the whistling post, which is eleven hundred and thirty-four feet from the cattle guards, that the train was running at a speed from fifty-three to fifty-five miles an hour; that at this place he gave the customary signal for the crossing, which was two long blasts and two short ones; that on account of a bend in the road he could not and did not see decedent upon the track until he was about six hundred feet from the cattle guards; that she was then about twenty feet west of the cattle guards upon the track, and coming to meet the train; that he instantly applied the emergency brakes; set the automatic bell to ringing; and gave blasts in quick succession, which the witnesses called the distress signals, from the time he saw her until the engine collided with her; that the speed of the train was reduced to thirty or thirty-five miles an hour by the time he arrived at the cattle guards, and he stopped the train as quickly as he could, and in fact did everything he possibly could to save decedent, after having seen her. His statement is corroborated by the fireman and all the witnesses who testi-

fied. The facts above stated were proven by the uncontradicted evidence. There being no controversy as to the facts of the case, the question is presented, whether, as a matter of law, there was any negligence on the part of the appellees, of which the appellant has a right to complain

There is no contention that the appellees failed to exercise ordinary care to prevent injury to decedent after her peril was discovered. In fact, the uncontradicted evidence shows that the engineer did all in his power to prevent injury to her after having discovered her upon the track. The appellant, however, insists that the appellees owed to decedent a lookout duty; that because of the number of persons who daily walked along the track at the point where decedent was killed that the employes operating the trains of appellee were required to give warning of the approach of a train, to maintain a lookout for persons upon the tracks, and to regulate the speed of the train so as to be able to stop it in time to prevent injury to one who might be upon the tracks, and that there was evidence in this case which tended to prove that appellees failed to use ordinary care to have the train under control, and were in fact operating the train at such a high rate of speed that they were unable to stop the train in time to save the decedent's life, after having discovered her peril, and that the question, as to whether or not appellees were negligent in so operating the train, ought to have been submitted to the jury.

There is no claim that decedent could have been seen upon the track any sooner than she was seen, or that the signals of the approach of the train were not sufficient and ample to have apprised decedent of the approach of the train and to have enabled her to have gotten out of the way, both before and after she was seen by the servants of appellee, upon the track, but the claim is made that although amply warned, she did not hear or heed the signals, and the employes operating the train were negligent in failing to operate it at such a speed, that they could have stopped it before coming in collision with the decedent, after they saw her peril.

Negligence has been defined as the failure to perform a duty, and if there is not a duty, there is not any negligence. If one does not owe to another the duty of per-

forming an act, then there is no negligence as to such person in failing to perform such act. C., N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky. 445; Schulte v. Louisville & N. R. R. Co., 128 Ky. 627; C. & O. Ry. Co. v. Nipp's Admx, 125 Ky. 49.

As to whether or not the actions of appellees in operating the train, at the time and place of the injury, as it was operated by them, was actionable negligence as to decedent, is reduced to the fact of whether decedent had a right or was licensed to be walking upon the tracks, and whether therefore appellee owed to her the duty of moderating the speed of the train and operating it with the anticipation of persons being upon the track at that place. The public crossing was only forty or fifty feet away, and there can be no doubt that appellees owed a full duty to persons who may have been using the crossing to maintain a lookout, to give warnings, and to have the train under control. The decedent, however, at the time she was struck by the train was not intending to use the crossing, nor attempting to use it, neither was she doing anything connected with the use of the crossing. The street in which the crossing existed ran in different directions from that in which she was proceeding. If she was not a licensee upon the tracks, then she was, in law, a trespasser, and the appellees owed her no duty, except to exercise ordinary care for her safety after having discovered her presence upon the tracks. The appellant relies for support of his contention, that the appellees owed decedent a lookout duty, upon the rule, so often declared, that where the public generally, with the knowledge and acquiescence of the railroad company, have continually used the tracks for a long period of time, the presence of persons upon the tracks where it is so used must be anticipated, and that it owes to persons thus using its right of way the duty of giving warning and keeping a lookout, and to operate the trains at such a speed as may enable them to stop them in case of necessity before injury has been inflicted. C. & O. Ry. Co. v. Warnock's Admr., 150 Ky. 74; Illinois Central Ry. Co. v. Murphy's Admr., 123 Ky. 794; L. & N. R. Co. v. McNary's Admr., 128 Ky. 414; C. & O. Ry. Co. v. Dawson's Admr., 159 Ky. 296; Corder's Admr. v. C., N. O. & T. P. Ry. Co., 155 Ky. 536; L., H. & St. L. Ry. Co. v. Lyons, 146 Ky. 603; Davis v. L., H. & St. L. Ry. Co., 122 Ky. 528; I. C. R. R. Co. v.

Francis' Admr., 130 Ky. 26; Shelby's Admr. v. C., N. O. & T. P. Ry. Co., 85 Ky. 225; McCabe's Admr. v. Maysville & Big Sandy R. Co., 28 R. 536. This rule has, however, not been applied to all places where persons have used the tracks of the railroad in considerable numbers. Its operation has been confined to public crossings, and to populous communities, cities, towns, streets or other places in a town, city or populous community, where the public have a right to be and go. It is said in Adkins' Admr. v. Big Sandy & Cumberland R. Co., 147 Ky. 30: "The mere use of a railroad track by the public does not convert the users from trespassers to licensees, unless it is at a place where the public have a right to go and to be, as at a public crossing or the like, or unless it is a city, or town or populous community where large numbers of people use the track, thereby putting upon the company the duty of anticipating their presence upon the track and the use of ordinary care to avoid injury to them." In the case at bar, at the place upon the tracks where decedent was unfortunately killed, and where she was proceeding to go, there was no street upon either side of the railroad tracks; the right-of-way was enclosed by wire fences upon either side from the crossing at Harrison street; cattle guards were placed across the tracks, with wings extending to the fences upon either side; the railroad tracks from the cattle guards to a distance of twelve hundred feet were constructed upon a fill; there were not any houses upon either side of the right-of-way which had a front thereon; the dwellings between the right-of-way and the county road, and which were few in number, all fronted to the side streets and county road, and no necessity existed for their occupants using the railroad tracks to go into Fullerton or to any place; there were not any roads, sidewalks or places for travel existing upon the right-of-way to the east of Harrison street anywhere. The enclosure of the right-of-way with fences and a cattle guard was all the railroad company could be expected to do to keep persons from using the tracks, and there was an entire absence of any necessity for traveling upon the tracks or any invitation to do so. Under these circumstances, it does not seem reasonable to require the employes of the railroad to anticipate the presence of persons upon the track, who, to get to it from south of the right-of-way, must turn aside from their streets

and roads and climb over or go through the fence, and for the limited number of persons at Morton's Addition, who live three-fourths of a mile away and who use the tracks simply for their pleasure or convenience. Under these circumstances, it cannot be said that the railroad company acquiesced in the use of its track, as a walking way, anywhere to the east of Harrison street.

In L. & N. R. R. Co. v. Redmon's Admrx., 122 Ky. 392, after discussing the relative rights and duties of the railroad companies and persons using the streets, where the streets of a town or city are occupied by the tracks of a railroad, it is said:

"But, while this is true, a railroad company may have the exclusive use of so much of its right-of-way within the corporate limits of a town or city as is not situated upon or immediately paralleled by streets, highways or alleys, to the use of which the public are entitled, and especially is this true if the right of way be enclosed to prevent its use by the public."

In that case, within the corporate limits of the town of New Haven, the decedent, Redmon, was killed by the train upon the track of the railroad at a place where the right-of-way was enclosed by fences upon the sides, and a cattle guard, with wings to it, at the point where the accident occurred. It was held that he was a trespasser, and the fact that many persons daily used the tracks along by that point as a walking way, and had done so for a long time did not convert them into licensees, and did not impose upon the railroad employes any lookout duty for them. In Brown's Admr. v. L. & N. R. R. Co., 97 Ky. 228, it was held, that under such states of fact the better doctrine is, that simple acquiescence on the part of a railroad company in the use of its tracks in this way does not amount to a license to do so.

The fact that the appellees owed duties to the persons who might be using the crossing at Harrison street and the streets contiguous to the station in Fullerton, and in the streets of the town through which the tracks passed, does not avail the appellant anything. While it is the duty of those in charge of trains to maintain a lookout, to give warnings of its approach, and to have the train under control at public crossings, and in the streets of towns, cities and populous places for the protection and safety of those having a right to use the

crossings and streets, the duties above enumerated do not have to be performed for the benefit of trespassers who may be using the tracks elsewhere. L. & N. R. R. Co. v. Redmon's Admx., 122 Ky. 399; Shackelford's Admr. v. L. & N. R. R. Co., 84 Ky. 43; L. & N. R. R. Co. v. Vittitoe's Admr., 41 S. W. 269; Davis Admr. v. C. & O. Ry. Co., 116 Ky. 144; C., N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky. 445; Helton's Admr. v. C & O. Ry. Co., 157 Ky. 380.

Hence, under the facts of this case, the decedent was not a licensee at the time of her death, but a trespasser, and the rules applying to trespassers must be applied in the determination of this case. L. & N. R. R. Co. v. Redmon's Admx., *supra*; I. C. R. R. Co. v. Johnson, 115 S. W. 798; Cobb's Admr. v. L. & N. R. R. Co., 124 S. W. 831; Sublett's Admr. v. C. & O. Ry. Co., 146 Ky. 530; Cumberland R. R. Co. v. Walton, 166 Ky. 371. There was no evidence which tended to prove that the employes operating the train failed to do anything which they could have done to save the life of decedent, after having discovered her presence upon the track, and hence there was not anything to be submitted to the jury. There could be no recovery unless there is some evidence of actionable negligence upon the part of the appellees. While the death was lamentable and unfortunate, it can only be attributed to her presence upon the track at a place where she could not lawfully be, and not to any negligence of the appellees.

The judgment is therefore affirmed.