## Louisville Railway Company v. Smock.

(Decided March 6, 1912.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Electric Cars—Outside City Limits—Signals.—When outside of the city limits and not upon a public highway electric cars may be run at any speed desired which is not so great as to render unavailable the ordinary signals of the approach of the car, and at such places the motorman is not required to ring his gong from time to time as he runs.

2. Person Walking Between the Ties—Care Required.—There being evidence that a person walking between the ties might have been seen by the motorman by ordinary care in time to avert the danger to him, the jury should not be instructed peremptorily to find for the defendant.

3. Instruction to Jury—Rights of Person on Track.—When a jury after being out for some time, return to the court room and ask the court to tell them whether the place where the injury occurred was private property or a public highway, it was error for the court to instruct the jury that the plaintiff had a right to walk where he was without telling them what the defendant's rights were.

FAIRLEIGH, STRAUS & FAIRLEIGH, FRED FORCHT, JR., and HOWARD B. LEE for appellant.

A. SCOTT BULLITT and JAMES HEMPHILL for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

The Louisville Railway Company has a double track running from the city of Louisville to the White City, a pleasure resort beyond the city boundary and west of it. George T. Smock on April 16, 1910, about eleven o'clock at night was struck by one of the west going cars about two squares beyond the city boundary and sustained serious injuries, to recover for which he brought this suit. At that time Thirty-seventh street was the western boundary of the city. Smock was a carpenter at work not far from Thirty-seventh street. He quit work about five o'clock and went with his men to a saloon on Thirty-seventh street to get some bills changed so that he could pay off his men, it being Saturday evening. After paying off his men he stayed there in the saloon until about eleven o'clock, and then started home. He lived below what is now Thirty-ninth street. It was raining and a west wind was blowing. As the rain was driving in his face he tucked his hat down over his eyes and put up his coat collar. There was a wagon road on the side of the car tracks, but this was muddy. There was also a cinder path between the two car tracks. He walked along the cinder path, as it was the dryest and best place to walk. According to the evidence for him, while he was thus walking with his back to the east a car going west came up behind him and knocked him down before he became aware of its approach. According to the testimony of the motorman, who was introduced as a witness for the defendant, the motorman first saw Smock when he was about fifteen feet in front of the car and staggering toward the track. The motorman applied his brakes, but before he could stop the car Smock was struck. There were but three passengers on the car. One of them says he did not hear the gong rung. The other two testify that the gong was sounded, but only a second or so before the striking of Smock by the car. When the car stopped, Smock was lying about six or eight feet behind it. The undisputed testimony of all the persons on the car is that one of the passengers was to get off at a stopping place a few feet east of Thirty-ninth street; that this passenger rang the bell for the stop some little distance back and when the car stopped the persons on the car thought it had stopped for the passenger to get off. The car in fact stopped about twenty-two feet east of the stopping place. The testimony of the plaintiff showed that it was customary for all the people who lived down there to use

the cinder path as a walk-way. The motorman testified that his headlight was burning and he was on the lookout, but that he did not see Smock sooner because the light from the headlight was not thrown off to one side, and Smock did not come within the range of his vision until he was about fifteen feet from him. The jury found for the plaintiff in the sum of $1,750.00. The court refused to grant a new trial and the defendant appeals from the judgment entered on the verdict.

It is insisted for the defendant that under the evidence the jury should have been instructed peremptorily to find for it. The undisputed evidence is that the place where Smock was injured was without the city boundary. There is no evidence that there was a public highway of any sort where he was injured. The proof however, does show that a number of people lived in the vicinity and that these people used the cinder path. The extent of this use and the nature of the locality are sufficient to show that it was a place where the presence of persons on or about the track might reasonably be anticipated, and therefore it was incumbent upon the railroad company in operating its cars along there to maintain a lookout for persons. If Smock was walking as he testified, he must have been in plain view of the motorman for some distance before he was struck, and we think it is clear from all the evidence that the sounding of the bell and striking of Smock by the car were practically simultaneous. In other words, the bell was sounded too late to be of any service to Smock in warning him of the danger. If the motorman saw Smock or by ordinary care could have seen him, it was incumbent upon him to use ordinary care for his safety; for he must have known that a man walking between the two tracks would be in danger of being struck by the car as he passed him. We therefore think the court properly refused to instruct the jury peremptorily to find for the defendant.

Instruction 1 given by the court is as follows:

"It was the duty of the motorman in charge of the westbound car in regard to which you have heard testimony, *to run his car at a reasonable rate of speed;* to keep a lookout ahead for persons upon the track, or who might be so near to the track as to be in danger of being struck by the car, *and at such places as he had reason to expect persons to be upon the track to give*

*timely warning of the approach of his car by the sound of the gong on the car,* and to exercise ordinary care to so run and operate his car as not to cause it to collide with persons upon the track or so near to the track as to be struck by the car; and if you believe from the evidence in this case that the motorman in charge of this car failed in any one of these particulars and negligently caused his car to strike the plaintiff and injure him, then the law of the case is for the plaintiff and you should so find.''

The company had the right to run its cars at any speed it saw proper beyond the city limits under ordinary conditions. The car was to stop a few feet beyond where it struck Smock and there was nothing to show its speed was so greet that the ordinary signals of its approach would not be sufficient to warn persons using the walkway. There was nothing in the testimony in this case to require that the car should be run at a more reasonable rate of speed, the tracks not being a public highway. We have often held in the case of steam railways that no rate of speed at ordinary places is negligent, and we do not see why the same rule should not apply to electric lines. If this car was required to run at a reasonable rate of speed at this point under the facts here shown, the same rule would apply to it at every point on its route. The object of building these lines is to furnish the public quick transportation, and those who walk on these tracks at places like this cannot demand that the speed of the cars shall be reduced if the speed is not so great as to render unavailable the ordinary signals of the approach of the cars. They take the tracks for a walkway as they find them, and the company cannot ordinarily be required by reason of their use of these tracks to run the cars at a more reduced speed.

While it was the duty of the motorman to keep a lookout he was only required to sound his gong when he saw some one whose safety reasonably required this. A motorman is not required to keep his gong ringing between crossings as he runs along the streets of a city. (Louisville R. R. Co. v. Edelin, 123 Ky., 629.) There is still less reason why he should do so when out in the country and not upon a public highway. In Louisville R. R. Co. v. Johnson, 131 Ky., 277, we held in a case like this, that the motorman must maintain a lookout, but we have never required him to keep his gong ringing.

The words in the instruction which we have placed
in italics should have been omitted. The remainder of
the instruction without these words, fairly gives the law
of the case. The same vice exists in instruction No. 3
and on another trial the court will omit from that in-
struction these words, "by arresting the motion of his
car or by stopping his car or by sounding his gong upon
the car;" and will insert in lieu of them these words,
"by the use of the means at his command."

After the jury had been out for some time deliber-
ating upon their verdict, they sent word to the court that
they wished some information from the court. They
were thereupon conducted into the court room, and one
of them in the presence of the others asked the court
this question: "We want to find out whether that road
belongs to the county or whether it is a private road?"
Thereupon the court instructed the jury as follows:
"The court instructs you gentlemen that the plaintiff
had a right to walk upon the road." This instruction of
the court under the circumstances was prejudicial to
the defendant. The court should have told the jury that
under the evidence the road was private property, and
that the law of the case was as defined in the court's
instructions. The jury may have concluded from this
final instruction of the court that the plaintiff had a
superior right to the railroad company at the place
where he was hurt, or that it had no right there at all.

Judgment reversed and cause remanded for a new
trial.