# Chesapeake & Ohio Railway Company v. Montjoy's Administrator.

(Decided May 10, 1912.)

## Appeal from Bath Circuit Court.

1. Peremptory Instruction—When Proper.—A peremptory instruction for the defendant is proper only when, after admitting every fact shown by plaintiff's evidence to be true, as well as all reasonable inferences that can be drawn therefrom, the plaintiff has failed to establish his case.

2. Personal Injuries—Trespasser.—As to trespassers upon its track, a railroad company is only liable in damages for injury inflicted by its train where it is shown that the danger to the injured party was discovered in time for the injury to have been avoided by the exercise of reasonable or ordinary care on the part of those in charge of the train.

3. Railroads—Duty to Trespassers.—It is incumbent upon a trespasser on a railroad track to keep out of the way of trains. It is not incumbent on the railroad company to keep a look-out for trespassers at places where the presence of persons on the track is not to be anticipated, and it owes him no duty until his presence on the track is discovered by those in charge of the train.

4. Same.—It is the duty of the engineer in charge of a train, after he discovers a trespasser upon the track, to use ordinary care in the exercise of all reasonable means at his command, consistent with the safety of the train, to avoid injuring the trespasser.

5. Trespasser on Railroad Track.—The engineer of a train has the right to assume that a trespasser on the track will use ordinary care for his own safety, and the engineer is only required to take such precautions to. avoid injuring the trespasser as might be reasonably expected of a man of ordinary prudence, situated as he was, and acting on this assumption.

SHELBY & SHELBY, LEWIS APPERSON and H. C. GUDGELL for appellant.

. NESBITT & THOMAS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

James Montjoy, a section hand in the service of appellant, was struck and killed in front of the depot at Olympia station, in Bath county, on December 23, 1909, by westbound express train No. 23 as it passed that station, between three and four o'clock in the afternoon. He had been at work during the morning of that day on what is known as the "Rose Run Mine" track, which branches off from the main line of appellant's road about a half mile east of Olympia, and leads to the ore mine of the Rose Run Mining Company, situated north of the railroad. About three o'clock he took a railroad tricycle, against the protest of his superior, and rode down the spur track about a mile and a half to where it joined appellant's main track. He there transferred the tricycle to the main track, with the assistance of McCarty, and started westwardly toward Olympia. McCarty told Montjoy that "No. 23" was a little behind time, and was liable to come at any time, although neither of them could then see it. Montjoy had gone only about four rail lengths, when McCarty saw the train coming from the east, and going westwardly in the same direction that Montjoy had gone. After Ware, the engineer of "No. 23," had given the usual station signal at the whistling post, which was at the junction of the tracks and a half mile east of Olympia, he saw on the track in front of him what seemed to him to be a wheel or velocipede apparently standing on the track, and a man standing by it. At this point the train was running on a down grade of a straight track, at the rate of fifty miles an hour. When Ware first saw the tricycle he could not tell whether it was standing or moving. The signal station is at the junction or spur of the two tracks, and is one-half mile east of Olympia; and, proceeding from this point toward Olympia, the next point designated in the record is the culvert or trestle, which is six hundred feet from the station; and west of that is the tool house, which is three hundred feet from the station. At the tool house the down grade of the track ends, and from that point westwardly to Olympia station the track proceeds upon an upgrade. When the train reached the culvert, Ware saw there was a man on the tricycle, and that it was in motion. Ware waited a moment to see if the man would get off the track, and then commenced giving the alarm whistle, which he sounded continuously from that moment until the train reached the station where the accident occurred. As soon as Ware

began to sound the alarm whistle, he shut off the steam and put on the air brake, and testifies that he did everything possible to stop the train. Several witnesses testify that Montjoy looked back at least twice at the train, but made no attempt to stop his tricycle, or take it from the track. When he reached the station he stopped his wheel, got off, and stood between the rails of the track instead of getting off on the side. He was immediately struck by the engine and killed.

Fuqua, the fireman, corroborates Ware in the essential features of his testimony, and further says that Montjoy not only looked back twice while riding, but looked back once after he had gotten off the tricycle at the station; and that he could easily, after the alarm began sounding at the trestle six hundred feet away, have placed himself beyond danger. Roberts, the telegraph operator, was sitting at the window in his office in the station, and looking up when he heard the danger signal, saw the tricycle coming down the track ahead of the train; and when Montjoy reached the window, Roberts called to him as loud as he could to jump off. Roberts also says that instead of leaving the track, Montjoy got off in the middle of the track, and made no effort to get his wheel from the track. Roberts further says he saw Montjoy look back twice as he came down the track, and once just as he got off the tricycle. According to the engineer's testimony, the speed of the train had been reduced to eight miles an hour when Montjoy was struck in front of the station, and the engine ran only about seventy-five or eighty feet, or about the length of one car, after the accident.

John Staten was standing in the door of Copher's store, about fifty feet east of the station, when Montjoy passed, and called to Montjoy three times to get off his wheel. Montjoy evidently heard Staten's call, for he turned and looked at Staten, but kept going. Mrs. Case corroborates the statements made by the other witnesses about Montjoy's looking at the train, and says he had gotten off when he was struck, and looked back over his left shoulder and saw the train coming—that he kept looking back all the time.

Just before Montjoy had transferred his tricycle to the main track at the junction one-half mile east of the station, Wells, who was traveling horseback, crossed the railroad at that point on the county road, and proceeded down the county road alongside of the railroad track

leading to the station. Wells had gone but a short distance from the crossing when he saw the train coming. He says the engineer commenced giving the danger signal when he was within about a hundred yards of the culvert, and had slackened the speed of the train to such an extent that when it had reached the culvert about six hundred feet east of the station, a man could get on or off the train; and that it was running yet slower when it got to the tool house, where it could have been stopped in from three to five rail lengths. He further says that when the train reached the tool house, which was the beginning of the upgrade, the engineer put on the steam and increased the speed of the train from that point. In one material respect Wells is corroborated by Perry Staten and Thornton Higley, who state that the train had slackened its speed to such an extent that persons could have gotten on or off of the train at the culvert. Olympia was not a stopping place for this express train.

Appellant denied the negligence charged against it, and relied upon Montjoy's negligence as a bar to any recovery. There was considerable evidence to the effect that Montjoy was under the influence of liquor.

Upon a trial the jury awarded the plaintiff a majority verdict for $1,999, and from a judgment upon that verdict the railroad company appeals.

Appellant insists that its motion for a peremptory instruction to find for the defendant should have been sustained; but, when we consider the facts developed in this case, in connection with the well established rule that a peremptory instruction for the defendant is proper only when, after admitting every fact proven by plaintiff's evidence to be true, as well as all reasonable inferences that can be drawn therefrom, the plaintiff has failed to establish his case, we must conclude that the ruling of the Circuit Judge, in the respect, was correct. C. & O. Ry. Co. v. Williams' Admr., 148 Ky., 178.

While it must be conceded that Montjoy was a trespasser upon appellant's track, and guilty of the grossest negligence in thus racing with the express train, it was nevertheless the duty of appellant's servants to use all reasonable means, at their command, to avoid injuring Montjoy, after they had discovered his peril.

The rule was stated in Dilas' Admr. v. C. & O. Ry. Co., 24 Ky. L. R., 1349; 71 S. W., 492, as follows:

"The law is well settled in this State by numerous decisions of this court, that as to persons who are tres-

passers upon its track, a railroad company can only be held liable in damages for injuries inflicted by its trains, where it is shown that the danger to the injured party was discovered in time for the injury to have been avoided by the exercise of reasonable or ordinary care on the part of those in charge of the train  In addition to the cases above indicated, the following may be cited in support of the doctrine announced, viz.:  Haskins' Admr. v. L. & N. R. R. Co., 17 Ky. L. R., 78; L. & N. R. R. Co. v. Wade, 18 Ky. L. R., 549, and L. & N. R. R. Co. v. Tinkham's Admr., 19 Ky. L. R., 1784.''

And, in L. H. & St. L. Ry. Co. v. Jolly's Admr., 28 Ky. L. R., 991; 90 S. W., 977, where the controlling facts were quite similar to the facts of the case at bar, we defined Jolly's duty in these words:

''And however this may be, when he took the tricycle out on the railroad track it was incumbent on him to keep out of the way of the train.  It was not incumbent on the railroad company to keep a lookout for him at places where the presence of persons on the track was not to be anticipated, and it owed him no duty until his presence on the track was discovered by those in charge of the train.  (Dilas' Admr. v. C. & O. Ry. Co., 24 Ky. L. R., 1347; Jacob's Admr. v. C. & O. Ry. Co., 24 Ky. L. R., 1879.)''

And, of the engineer's duty to Jolly, we said:

''The engineer owed the intestate no duty until his presence on the track was discovered.  The engineer was under no obligation to look out for him.  When the engineer came around the curve and saw the section men along the track, naturally his eye would be upon them to see if they were safe or were giving any signals, and not until he passed them in glancing along the track would he naturally see the man on the tricycle beyond. The company is not liable if he might have seen Jolly in time to have saved him.  It is only liable if he might have saved him by proper care after he in fact saw him.''

It was appellant's duty to do everything within its power to prevent the accident after it had discovered Montjoy's peril; and since there is evidence tending to show that appellant's train increased its speed as it passed the tool house three hundred feet from the point of the accident, and did not, therefore, do its whole duty in the premises, the case was properly submitted to the jury.

Instruction "C," asked by appellant, was properly rejected, because it failed to put any responsibility upon appellant's servants in charge of its train, and exonerated appellant in case Montjoy was guilty of contributory negligence. Although Montjoy may have been guilty of contributory negligence, nevertheless, if the appellant, by the exercise of ordinary care, could have prevented the injury, it would still be liable.

Finally, appellant insists that the Circuit Judge erred in giving instruction No. 1, which reads as follows:

"If the jury believe from the evidence in this case that Jas. Montjoy at the time he was injured and killed was upon the defendant's railroad track in Bath county, Kentucky, and its agents in charge of the engine and train which injured and killed him negligently failed to ring the bell or sound the whistle or slacken the speed of the train or failed to stop the train after they discovered his peril they will find for plaintiff such compensatory damages, if any, as the plaintiff has sustained as the direct and natural cause of said negligence and killing, not to exceed the sum of one thousnd nine hundred and ninety-nine ($1,999.00) dollars, the amount claimed; unless you believe from the evidence that James Montjoy by his own negligence contributed to such an extent to the injury and killing that but for his negligence it would not have happened. In that event the plaintiff can not recover unless defendant company's agents who were in charge of the engine and train knew of his peril in which his negligence had placed him and thereafter failed to observe ordinary care to avoid the injury and killing which followed."

This instruction was erroneous and misleading in several respects. It put an absolute liability upon appellant in case its engineer either negligently failed to ring the bell, or sound the whistle, or slacken the speed of the train, or failed to stop the train after he discovered Montjoy's peril. But, as there is no contradiction in the proof that Montjoy saw the train in ample time to get off the track, a failure to ring the bell or to sound the whistle, in no way brought about Montjoy's death. Furthermore, the instruction erroneously placed upon the engineer the absolute duty of stopping the train after he discovered Montjoy's peril, regardless of the engineer's ability to so stop the train. In lieu of instructions Nos. 1 and 5, the court will, upon a retrial of the case, give the following instructions:

1.  If the jury believe from the evidence that the engineer in charge of the engine in question, after he discovered Jas. Montjoy upon the track, failed to use ordinary care in the exercise of all reasonable means at his command, consistent with the safety of the train, to avoid injuring him, and by reason of such failure the said Montjoy lost his life, the law is for the plaintiff, and the jury should so find.

2.  But. unless the jury believe from the evidence that after the discovery of Montjoy's peril, the engineer failed to use ordinary care in the exercise of all reasonable means at his command to avoid injury to him, consistent with the safety of the train, and by reason of such failure Montjoy lost his life, the jury should find for the defendant.

3.  The engineer of the train had the right to assume that Montjoy would use ordinary care for his own safety, and he was only required to take such precautions to avoid injury to Montjoy as might be reasonably expected of a man of ordinary prudence, situated as he was, and acting on this assumption.

C. & O. R. R. Co. v. Lang, 135 Ky., 76.

For the error in the instructions, the judgment is reversed, and the case remanded for a new trial.