## Cincinnati, New Orleans & Texas Pacific Railway Company v. Carter.

(Decided May 31, 1918.)

### Appeal from Jessamine Circuit Court.

1. Negligence—Failure to Perform Duty.—Negligence being the failure to perform a duty, there can be no negligence where there is no duty.

2. Railroads—Licensees—Lookout Duty.—A railroad company owes a licensee upon its tracks no duty except to exercise ordinary care for his safety after his presence upon the track has been discovered, unless the company owes him a lookout duty.

3. Railroads—Lookout Duty.—A lookout duty arises only where the public generally, with the knowledge and acquiescence of the railroad company, have continuously used its tracks for such a period of time that the presence of persons upon the track where it is so used ought reasonably to be anticipated.

4. Railroads.—Where the public generally with the knowledge and acquiescence of the railroad company have continuously used the tracks for such a period of time that the presence of persons on the track where it is so used ought reasonably to be anticipated, the company owes persons thus using its track the duty to give warning of the approach of its trains, to keep a lookout, and to operate its trains at such a speed as may enable the engineer to stop it before injury has been inflicted.

5. Railroads—Operation—Speed of Trains—Negligence.—In the absence of a prohibitory statute or ordinance a railroad company may, ordinarily, run its trains at such speed as its sees fit, and

a charge of negligence cannot be predicated on the speed at which a train is run unless there are attendant circumstances which make such speed negligence.

6. Railroads—Private Crossings—Rule as to Use.—The rule that a person about to use a private crossing is entitled to rely upon and have the benefit of signals usually given for a nearby public crossing, is confined in its application to those persons who used the crossing, and does not extend to persons using the track.

7. Railroads.—A railroad company owes no duty to an employee while riding upon a motor car or tricycle on the track, in the country, until his presence upon the track is observed by those in charge of the train.

BRONAUGH & BRONAUGH and JOHN GALVIN for appellant.

C. C. BAGBY, CHENAULT HUGUELY, BAGBY & HUGUELY and E. V. HOOVER for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellant operates a railroad from Cincinnati, Ohio, to Chattanooga, Tennessee, passing through Jessamine county, Kentucky. It maintains an electric block signal system for the protection of its trains. This block system is divided into districts or sections, each section being under the control of a maintainer or signal inspector, who personally looks after the maintenance of the blocks, making repairs and seeing that they are kept in working order.

What is known as the Nicholasville section extends from a point north of Brannon near milepost 84 to a point a short distance north of Wilmore near milepost 95, and was on December 23rd, 1915, under the charge of the appellee, Ray Carter, as signal maintainer. Carter had been in the service of the appellant in various capacities since 1907, and had been signal inspector and maintainer for about six years. He was an experienced railroad man, acquainted with the time card and the manner of running extra trains. For the purpose of traveling over his section in the performance of his duties as signal maintainer and inspector of the several signal stations in his section he used a gasoline motor car or track velocipede, which was furnished him by the company.

On December 23rd, 1915, Carter left the telegraph office at the Nicholasville station about noon and went to his home for dinner. After dinner Carter returned to the tool house where he kept his motor car and placed

it on the side or passing track and proceeded south-wardly, intending only to go down to the yard and do some work. However, after he had arrived at the yard and found that he had left the necessary tools at home, he changed his mind and proceeded on his motor car towards the south end of his section. He continued on the side track until he reached the Harrodsburg turnpike crossing where he transferred his motor car from the side track to the main track, and proceeded on his way. Although Carter did not, at any time, inform himself of the location of the trains upon the track, he doubtless knew the schedule of the regular trains.

At Jessamine station Carter met a freight train closely followed by what is known as the High Bridge hill engine. He took his motor car off the track, let this train and engine pass, and then placed his car back on the track and continued his journey. At a point about two miles south of Jessamine station there is a rock cut ten or twelve feet deep and between five hundred and six hundred feet long. Entering this cut from the north the track curves to the left. South of the cut there is a fill, and south of the fill is another cut which extends southwardly to an overhead bridge near the Wilmore cemetery. The signal block or section 95-1 is located at the north end of the second cut; and, about thirty-five or forty yards north of this signal block there is located what is known in the record as the "triangle." The triangle is a post with a triangle on its top and has some connection with the electric block system. The distance between the two cuts is about the distance of ten telegraph poles, or 1350 feet; and the curve continues through both cuts.

When Carter had reached a point between the two cuts somewhere near the triangle he was run upon and hit from behind by a train composed of an engine and a caboose approaching from the north, and running as an "extra," at a speed of about twenty-five or thirty miles an hour. Carter was knocked from the track and severely injured. The motor car landed on the pilot of the engine, from which it was removed after the train had stopped at a point one hundred and fifty or two hundred yards south of the place of the accident.

The engine which hit Carter was a large engine of the type known as the 700 class. It was equipped with

an automatic bell which had been ringing since the train left Lexington. About three hundred yards north of the place of the accident the engine gave the usual signal for the road crossing at the bridge south of the point of the accident. It did not, however, give a crossing signal at the signal post which stood near the place of the accident.

The proof shows that a man standing on the track at the place of the accident and looking northwardly could see the track for a distance of three hundred yards. But Rose, the engineer, testified without contradiction, that being on the right or outside of the curve as he proceeded southwardly, the boiler of his engine obstructed his view as he passed around the curve to such an extent that he did not see Carter until he was within seventy feet of him, and that he then immediately put on the emergency brake and did everything that he possibly could have done to prevent the collision.

Carter brought this action against the railroad company, Rose the engineer, and Baker its conductor, and obtained a verdict and judgment for $3,300.00 against the company. Rose and Baker were exonerated by a peremptory instruction. The company appeals.

The appellee rested his case upon three alleged grounds of negligence upon the part of the company; (1) that the train was running at a high and dangerous speed; (2) that the company failed to maintain a proper lookout for the appellee; and, (3) it failed to give him timely warning of the train's approach. Many other questions, such as contributory negligence upon the part of Carter, his assumption of risk, and whether the train and Carter were at the time engaged in interstate or in intrastate commerce have been discussed and relied upon by the company; but in our opinion the case is to be disposed of under the grounds relied upon by the appellee to sustain his judgment.

It being elementary law that negligence is the failure to perform a duty, there can be no negligence where there is no duty. Schulte's Admr. v. L. & N. R. R. Co., 128 Ky. 627; C. N. O. & T. P Ry Co. v. Nipp's Admx., 129 Ky. 49; C. N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky. 445; Watson's Admr. v. C. & O. Ry. Co., 170 Ky. 259. What was the duty of the railroad company to Carter under the facts of this case? Carter insists

that the company owed him the duty of not running its train at a dangerous speed, which in this case did not exceed thirty miles an hour; that it owed him a look-out duty, thereby imposing upon the company the duty of exercising ordinary care in discovering the plaintiff's presence upon the track; and, to give him timely warning of the train's approach. On the other hand, the company claims that it had the right to run its train in the country at any speed so that it did not endanger the safety of the train or its passengers, and further, that the proof conclusively shows that the train was not running at a dangerous speed; that it did not owe appellee any lookout duty under the circumstances, but only to protect appellee after his peril was discovered; and, that the engineer did everything within his power to save the appellee after his presence upon the track was discovered. We will consider the several points briefly.

This court has often declared that a railroad company owes a licensee upon its tracks no duty except to exercise ordinary care for his safety after his presence upon the track has been discovered, unless the company owes him a lookout duty. But a lookout duty arises only where the public generally, with the knowledge and acquiescence of the company, have continuously used the tracks for such a period of time that the presence of persons upon the track where it is so used ought reasonably be anticipated. In such cases the company owes to persons thus using its track the duty to give warning of the approach of its train, to keep a lookout, and to operate its train at such a speed as may enable the engineer to stop it before injury has been inflicted. I. C. C. R. R. Co. v. Murphy's Admr., 123 Ky. 744; L. & N. R. R. Co. v. McNary's Admr., 128 Ky. 414; I. C. R. R. Co. v. France's Admx., 130 Ky. 26; C. & O. Ry. Co. v. Warnock's Admr., 150 Ky. 74; C. & O. Ry. Co. v. Dawson's Admr., 159 Ky. 296, are a few of the cases announcing this doctrine.

But Carter also owed a duty to the company. L. H. & St. L. Ry. Co. v. Jolly's Admr., 28 Ky. L. R. 990, 90 S. W. 977, is, in its controlling facts, quite like the case at bar; and in defining the duty of an employe using a tricycle on the track the court there said:

"When he took the tricycle out on the track it was incumbent upon him to keep out of the way of the train.

It was not incumbent upon the railroad company to keep a lookout for him at places where the presence of persons on the track was not to be anticipated, and it owed him no duty until his presence on the track was discovered by those in charge of the train. Dilas' Admr. v. C. & O. R. R. Co., 24 Ky. L. R. 1347; Jacob's Admr. v. C. & O. R. R. Co., 24 Ky. L. R. 1870.''

To the same effect see I. C. R. R. Co. v. Tyson's Admx., 32 Ky. L. R. 1390, 108 S. W. 863; C. N. O. & T. P. Ry. Co. v Harrod's Admr., 132 Ky. 445; C. N. O. & T. P. Ry. Co. v. Yocum's Admr., 137 Ky. 117; C. & O. Ry. Co. v. Mountjoy's Admr., 148 Ky. 282; L. & N. R. R. Co. v. Seeley's Admr., 180 Ky. 308; and the very recent case of L. & N. R. R. Co. v. Elmore's Admr., 180 Ky. 733, and the cases there cited.

Neither can appellee complain of the speed of the train. The general rule is that in the absence of a prohibitory statute or ordinance a railroad company may ordinarily run its trains at such speed as it sees fit, and that a charge of negligence cannot be predicated on the speed at which a train is run unless there are attendant circumstances which make such speed negligence. Hummer's Extr. v. L. & N. R. R. Co., 128 Ky. 480; L. & N. R. R. Co. v. Engleman's Admr., 135 Ky 515, 2 Ann. Cas. 565; Louisville Ry. Co. v. Smock, 147 Ky. 345; Note in Ann. Cas. 1914B 602. There is no statute in this state regulating the speed of trains in the country; but whenever the track passes through a populous community or at a place where the presence of persons upon the track may reasonably be expected, it is the duty of the company to keep a lookout for such persons, to give notice of the approach of its trains, and to moderate their speed to the extent that may be necessary for the protection of the public. I. C. R. Co. v. Flaherty, 139 Ky. 147; I. C. R. R. Co. v. Murphy's Admr., 123 Ky. 787, 11 L. R. A. (N. S.) 352, and cases there cited.

In this case the train was not, at the time of the accident, running through a town or village or passing a point at which the presence of persons upon the track might reasonably have been anticipated. The accident occurred at 1:23 o'clock A. M., in the country. The speed of a train under these conditions will not constitute negligence to persons on the track, whose presence is unknown. Brown's Admr. v. L. & N. R. R. Co., 17 R.

148, 54 S. W. 179; Gregory v. L. & N. R. R. Co., 25 R. 1988, 79 S. W. 238.

In Gregory v. L. & N. R. Co., *supra*, the court said: "If at every curve, bridge, tunnel, cut and fill not plainly in view for a long distance the train would have to slow up, give signals and warnings, and take extraordinary precautions on account of possible trespassers, because other trespassers were in the habit of using the track, it would so retard as to practically destroy the railroad business. On the contrary, it is the duty of these common carriers to serve the public by the diligent use of their tracks and means. Their duties are onerous, and they are necessarily held to a high standard of strict performance in their discharge to the public with whom they must deal. To impose upon them this additional and extraordinary burden of policing their whole line of tracks, or to run their trains so slow and with such frequent warnings as to guard the safety of trespassers, would be equivalent to turning the right of way into a public highway for footmen. Such a rule would be against the public policy, that considers alike the welfare of the public in securing to it rapid and safe service from the carrier as well as the preservation of human life."

Neither is appellee in a position to complain that the company was remiss, in any degree, in failing to give him warning of the approach of the train. In C. N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky. 445, where a brakeman was killed, it was claimed, as here, that the engineer of the train that killed Harrod was guilty of negligence in failing to give warning of the approach of the train and in running it at a high and dangerous speed. In that case, it was plaintiff's theory that if the situation was such as required certain signals and warnings to be given by moving trains at or near the point of the accident, Harrod was entitled to rely upon their being given and if they were not given it was negligence as to him. But in overruling that contention the court said:

"The public have little or no option as to what highways they must travel. The public policy has been and is to require railroad companies to give certain warning signals at the highway crossings. Why? In order to apprise travelers upon the highways about to use the

crossing that the railroad train was approaching and about to pass over it, so that the former might, as they probably could, by stopping their vehicles, keep out of the way of the train, or, if pedestrians, keep off the track while the train was passing. As trains running at a high rate of speed cannot stop so easily, and cannot turn out of the way at all, the warning is to the users of the highway, so that the train can have a clear and unobstructed passage over the crossing. This warning, then, is not for the benefit of those on the train or elsewhere than at the railway highway crossing. . . . The failure to whistle for the crossing may have been negligence as to those of the public using the crossing, but for workmen about the yard half a mile away, though they may have come, very naturally, to rely upon it, it was not a duty owing to them, and its omission was not therefore negligence as to them.''

The rule announced in Cahill v. Cincinnati, etc., Ry. Co., 92 Ky. 345, that one about to use a private crossing was entitled to rely upon and have the benefit of signals usually given for a nearby public crossing, has been strictly confined in its application to those persons who used the crossing, and does not extend to persons using the track. L. & N. R. R. Co. v. Elmore's Admr., *supra,* and the cases there cited.

None of the witnesses placed the speed of the train at more than thirty miles an hour. It is clear, therefore, that since the company did not owe Carter a lookout duty, and was not operating its train at an excessive or dangerous speed, it owed him only the duty of protecting him after his presence upon the track was discovered. The engineer is, however, uncontradicted in his statement that he did not discover Carter's presence upon the track until the engine was within seventy feet of him, and that he then did everything within his power to prevent the collision. So, we find, under the facts of this case, that the appellant was not negligent in any of the respects charged, and that the court should have sustained the company's motion for a peremptory instruction. L. H. & St. L. Ry. Co. v. Jolly's Admx., 28 R. 989, 90 S. W. 977; C. & O. Ry. Co. v. Mountjoy's Admr., 148 Ky. 282; L. & N. R. R. Co. v. Elmore's Admr., *supra.*

Judgment reversed.