HARTUNG v. UNION PAC. R. CO.*
(No. 1255; July 20, 1926; 247 Pac. 1071.)

MASTER AND SERVANT—RECOVERY FOR DEATH—REASONABLE CARE—
NEGLIGENCE—SPEED OF RAILROAD TRAIN—SIGNAL DISPLAY.

1. Where one of two equally reasonable inferences authorizes recovery for employee's death, and other not, neither has any probative force, and one cannot be arbitrarily chosen in preference to other.

2. Custom and rule of railroads that conductor of inferior train must look out for train with superior rights *held* not contrary to requirement of reasonable care, so as to authorize recovery for death of flagman for failure to notify passenger train that it was to "saw by" freight train at way station.

3. In action for death of flagman, claim of negligence because of defective light and engineer's failure to look and see decedent, will be disregarded, where there is no showing that accident could have been prevented if light had been good and engineer had looked, the evidence shows the engineer did look, and only evidence of defect in light was that it was not perfect.

4. Running passenger train, which killed flagman, at from 35 to 50 miles per hour in thinly populated district at night *held* not negligence per se, in view of company rule placing maximum speed at 60 miles per hour.

5. If failure of duty to display red light on rear of freight train was proximate cause of death of flagman in attempt to flag passenger train, railroad is liable under federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665), notwithstanding negligence of deceased.

6. Failure to display red light on freight train at way station where passenger train was to "saw by" *held* not to create liability for death of flagman attempting to flag passenger train, in absence of showing that such failure contributed to accident.

7. Failure to show red light at rear of freight train at way station, where passenger train was to "saw by," *held* not negligence as to flagman killed during attempt to flag passenger train.

8. Conductor of freight train stopped at way station to allow passenger train to pass and engineer on passenger had right to presume that flagman in flagging passenger would carry out instructions and look out for his own protection.

9. Primary duty for railroad employee's protection devolves upon himself.

*See Headnotes:   (1) 22 C J p. 12 n. 36; 39 C J p. 286 n. 30; p. 1044 n. 6; (2) 39 C J p. 475 n. 9.   (3) 39 C J p. 286 n. 30; p. 442 n. 32; p. 446 n. 39; p. 1088 n. 26.   (4-6) 39 C J p. 469 n. 80; p. 820 n. 60; p. 821 n. 62; p. 1164 n. 43.   (7) 39 C J p. 459 n. 13.   (8, 9) 39 C J p. 291 n. 52, 53, 54; p. 459 n. 13; p. 461 n. 20.

APPEAL from District Court, Laramie County; WILLIAM A. RINER, Judge.

Action by Martin H. Hartung, administrator of the estate of Charles F. Smith, deceased, against the Union Pacific Railroad Company. Judgment for defendant, and plaintiff appeals.

*John C. Pickett* and *William C. Mentzer*, for appellant.

The court erred in refusing plaintiff permission to show the condition of lights on the rear end of the caboose standing on the passing track at Burns, and also as to condition of lights of the block signal; the court also erred in sustaining defendant's motion for a directed verdict; Hines v. Sweeney, 28 Wyo. 57; So. R. Co. v. Cook,

226 Fed. 1; Stevens v. Ry. Co., (Mass.) 69 N. E. 339. A violation of company rules is material as affecting the question of negligence; Hayward v. Ry. Co., 8 L. R. A. N. S. 1062; Potter v. Ry. Co., 208 Ill. App. 363. The circumstances of the accident, the position of the body, the speed of the train and the condition of the headlight presented a question of fact that should have been submitted to the jury; Sudden v. Ry. Co., 129 N. Y. S. 107. It cannot be presumed in this case that deceased extinguished his lantern or committed suicide, the presumption being that a person will use every precaution to preserve his own life; Cram v. Ry. Co., 101 Pac. 914 (Cal.); Ellis v. Oil Co., (Mo.) 110 N. W. 20; Peterson v. Oil Co., 106 Pac. 337; Co. v. Benjamine, 165 S. W. 120 (Tex.); Baker v. Ry. Co., 149 Fed. 882; Foley v. Power Co., (Cal.) 112 Pac. 467; Wilson v. Ry. Co., (Ia.) 142 N. W. 54; Korsch v. Ry. Co., (Ia.) 128 N. W. 529. A high rate of speed may, under some circumstances, be evidence of negligence; Blackburn v. Ry. Co., (La.) 80 So. 708; Stem v. Ry. Co., (Tenn.) 221 S. W. 192; Davis v. Scott, 235 S. W. 407; Ry. Co. v. Cook, (Texas) 214 S. W. 539. Under the circumstances, the presence of a flagman at the point of this accident should have been anticipated; 184 Pac. 765; or that people may be on the track; Ry. Co. v. Jones, (Okla.) 190 Pac. 385. An excessive rate of speed is evidence of negligence that should be submitted to the jury; Fillingham v. Ry. Co., (Mich.) 175 N. W. 228; Elliott v. Co., (Conn.) 80 Atl. 283; Hines v. Moore, (Miss.) 87 So. 1; Co. v. Hague, (Kan.) 38 Pac. 257; Ry. Co. v. Berry, (Ky.) 175 S. W. 340; Hollister v. Hines, (Minn.) 184 N. W. 857; Ry. Co. v. Miller, (Ky.) 135 Am. St. Rep. 433. It was the duty of the defendant to promulgate rules for the protection of employees; Engen v. Rambler, 20 Wyo. 126; So. Ry. Co. v. Smith, 205 Fed. 362. It was defendant's duty to operate his train at a rate of speed permitting time to stop within the distance covered by its train lights; Chambers v. Ry. Co., (W. Va.)

29 A. L. R. 1051, 117 S. E. 480; Blackburn v. Ry. Co., supra.

*Herbert V. Lacey* and *John W. Lacey,* for respondent.

The engineer had a right to presume that decedent would get off the track before the train reached him and he was not obligated to check his train until, from the circumstances, a person of ordinary prudence might assume that decedent was unconscious of the approaching train; Johnson v. R. R. Co., (Ky.) 25 S. W. 754; Lingenfelter v. R. R. Co., 4 S. W. 185, 9 Ky. Law Rep. 116; Nichols v. R. R. Co., 6 S. W. 339, 9 Ky. Law Rep. 702; France v. R. R. Co., 22 S. W. 851, 15 Ky. Law Rep. 244; Embry v. R. R. Co., 36 S. W. 1123; Murray v. So. R. R. Co., 140 Ky. 453, 131 S. W. 183. It was decedent's duty to watch for the train and keep out of its way; Ry. Co. v. Hunt, (Ky.) 135 S. W. 288. Section men whose duty requires them to work upon the track, cannot predicate negligence upon disobedience of a law or custom requiring a company to ring and whistle at crossings; Lepard v. R. Co., (Mich.) 130 N. W. 668. Defendant violated no duty, which it owed deceased; violation of a statutory duty provides an action only for those within the class protected; Lepard v. R. Co., supra; Figone v. Guisti, (Cal.) 185 Pac. 694; Faris v. Hoberg, (Ind.) 33 N. E. 1028; Muncie Co. v. Davis, (Ind.) 70 N. E. 875; Indiana Co. v. Neal, (Ind.) 77 N. E. 850; Guse v. Martin, (N. J.) 114 Atl. 316; Clark v. Ry. Co., (Kan.) 11 Pac. 134; Hamilton v. Co., (Minn.) 80 N. W. 693; Harty v. Central R. R. Co., 42 N. Y. 468. Where there is no breach of duty, there is no negligence; Kreigh v. Co., 152 Fed. 120; 2 Cooley Torts, 1410; Cincinnati Co. v. Swann's Adm'x., 169 S. W. 886; Waymire v. Ry. Co., (Kan.) 190 Pac. 588; Marklinger v. U. P. R. Co., (Kan.) 147 Pac. 1132; Ry. Co. v. Reynolds, (Ga.) 20 S. E. 70. Cases cited by appellant are clearly distinguishable upon the facts; where circumstantial evidence is relied upon, it must be proved, as circumstances are not presumed; U. S.

v. Ross, 92 U. S. 281; 2 Rice Ev. 768. It is contended that
the court erred in directing the verdict, for the following
reasons: (a) Decedent was on the track. (b) The
headlight was imperfect. (c) Excessive speed. (d) The
engineer was not looking. In view of the evidence, we
submit the following authorities as against this conten-
tion: Conniff v. Ry. Co., 99 S. W. 1154; Ry. Co. v. Harrod's
Adm'r., (Ky.) 115 S. W. 699; Louisville R. Co. v. Seeley's
Adm'r., 202 S. W. 638; Quinlanton v. U. P. R. Co., 197
Pac. 1095; Gabal v. R. Co., (Mo.) 158 S. W. 12; Williams
v. So. Pac. Co., (Cal.) 160 Pac. 660; 1 White's Per. Inj.
434; 2 Bailey Per. Inj., 918; 3 Elliott Railroads, (2d Ed.)
629; Ry. Co. v. McIntire, (Okla.) 119 Pac. 1008; Hines v.
Pershin, (Okla.) 215 Pac. 599; Bridge Co. v. Seeds, 144
Fed. 605, (C. C. A. 8); Newport News Co. v. Howe, 52
Fed. 362; Riccio v. New York etc. R. Co., (Mass.) 75 N.
E. 704. One given warning of the approach of a train is
bound to act with reasonable promptness for his own
safety; Hines v. Sweeney, 28 Wyo. 57. The evidence shows
that decedent was not on the track; there was no evidence
that the headlight was not in good condition; no negli-
gence was shown in regard to speed; Hines v. Sweeney,
supra; Ry. Co. v. Judah, (Kan.) 70 Pac. 346; Ry. Co. v.
Schriver, (Kan.) 103 Pac. 994; Land v. R. Co., (Kan.) 148
Pac. 612; R. Co. v. Hague, (Kan.) 38 Pac. 257; Custer v.
R. Co., (Pa.) 55 Atl. 1130; Sutton v. Ry. Co., (Wis.) 73 N.
W. 993. The evidence showed that the engineer was
looking; the rules in effect by the company have legal
sanction; Railroad Co. v. Neer, 26 Ill. App. 356; Kennelty
v. Railroad Co., (Pa. Sup.) 30 Atl. 1014; Little Rock R.
Co. v. Barry, 84 Fed. (C. C. A. 8) 944; Gilbert v. Ry. Co.,
128 Fed. (C. C. A. 8) 529; Ry. Co. v. Walker, 172 Fed. (C.
C. A. 8) 346. Even if all of plaintiff's evidence had been
received, defendant would have been entitled to a per-
emptory instruction; Searles v. Ry. Co., 101 N. Y. 661;
Warner v. R. R. Co., (Mo.) 77 S. W. 67; Caudle v. Kirk-

bridge, (Mo.) 93 S. W. 868.   Where injury may have re-
sulted from one of two causes, one a negligent act, the
other a cause for which defendant is not responsible, the
jury will not be permitted to speculate as to its verdict;
Thomas v. Co., (Ky.) 151 S. W. 47; Davis v. Allen, (Ky.)
251 S. W. 194; Goy v. Director General of Railroads, (N.
H.) 111 Atl. 855; Schell v. Ry. Co., (Wis.) 113 N. W. 657.

Blume, Justice.

Martin H. Hartung, Administrator of the Estate of
Charles F. Smith, sued the Union Pacific Railway Com-
pany for causing the death of said Smith on September
1, 1921.   At the conclusion of the testimony, the court di-
rected the jury sitting in the case to return a verdict in
favor of the railway company.   This was done, and judg-
ment was rendered for the defendant, from which the
administrator appeals.

The salient facts are as follows:   On the 1st day of
September, 1921, and for a number of years prior thereto,
Charles F. Smith, the decedent, was in the employ of said
railway company as a flagman or rear brakeman on a
freight train.   He had considerable experience as such.
He was a man of good habits, and was careful and dili-
gent in his work.   On the date last above mentioned he
acted as flagman on a west-bound freight train running
between Sidney, Nebraska, and Cheyenne, Wyoming.   The
railway company had a double track between these places,
all west-bound trains running on the north track, and all
east-bound trains on the south track.   The freight train
in question carried eighty-four cars.   Odel Harper was
the conductor in charge.   At Pine Bluffs, Wyoming, Har-
per learned when train No. 17, an interstate, west-bound
passenger train would go through.   This train had the
right of way.   He decided that he could run his train into
Burns, Wyoming, in time to clear the track for train No.
17.   It was pulled onto the passing-track at Burns about
12:30 at night.   The freight train was longer than the

passing-track and it was necessary to "saw by" train No. 17 at that point. By "sawing by" is meant the method used· for letting a following train go by in this manner, namely: The train ahead pulls onto a passing-track and out onto the main line until the rear of the train ahead is in the clear of the main line. The second train, that is to say the train to pass pulls past the rear end of the first train on the passing-track sufficient to allow that train to back onto the main line, in order to clear the main line ahead for the second train. When the freight train in question had pulled onto the passing track at Burns, Smith, in the performance of his duties as flagman and pursuant to his orders given him by the conductor, left the caboose of the freight train and went back to flag train No. 17. In doing so it was his duty to go one-fourth mile and plant one torpedo, then go one-fourth mile further and plant two torpedoes and then come back to the first torpedo to stand there and flag train No. 17 with his lantern. The proper place to plant the torpedoes was on the north rail of the north track. Smith left the caboose aforesaid with complete equipment, which included a lighted red lantern and a lighted white lantern. Harper, the conductor, went to the depot at Burns to telephone the dispatcher at Cheyenne to get further time on train No. 17. He testified that he was in the depot approximately fifteen minutes—a sufficient time for Smith to have planted his torpedoes and to have come back to the proper place; that when he came out of the depot and went back to his caboose he looked for the flagman but was unable to see anything of him, although he could have seen him had the latter's lanterns been lighted. About the same time train No. 17 came around a big curve two miles east of Burns, and thereafter was continuously in sight. About 3000 feet east and back of the freight train the beams of the headlight of train No. 17 were thrown directly on the track, indicating its approach. It whistled for the first

time at about that place and whistled again a little later. Because of other caution signals not in controversy here the engineer on that train had shut off the steam and made a light application of the air brakes when about three eighths to five eighths of a mile east of the freight train, and train No. 17 was running at the time at a rate estimated at 35 to 50 miles per hour—probably somewhat faster than it ordinarily would have run, because it was late and had been ordered to make up time.  According to the engineer's testimony no torpedoes were struck either one half mile or one fourth mile back of the freight train, but one torpedo was struck about 740 feet east of the latter train.  The second whistle was still being sounded when this torpedo exploded.  At the same time Harper, the conductor on the freight train, also flagged train No. 17, because, as he testified, he saw that it had not been flagged by the flagman.  The train stopped in response to the torpedo and the conductor's flag.  Its brakeman went to its rear to protect it.  He then discovered the decedent near the exploded torpedo.  The latter had been apparently struck on the left part of his body. The left leg was broken in several places.  While able to move a little, he was apparently in an unconscious condition.  He was put in the baggage car of train No. 17, was brought to Cheyenne and taken to a hospital where he died soon thereafter.  The remains of the exploded torpedo were found a few feet east of the place where the decedent was found, and had been planted on the south instead of the north rail of the track.  The lanterns of the decedent were found near the exploded torpedo.  The place of the accident was open prairie, the town of Burns lying south of it on a hill, and the only buildings in the vicinity were a station and a section house.  The testimony further shows that the conductor on the freight train displayed a green lantern at the rear of the caboose, which indicated safety.  A red light should have been displayed

instead, in order to indicate to a following train to stop. The testimony on this point was, however, over objection, stricken out by the court, and further testimony on the same point was subsequently excluded. This is claimed as one of the errors in the case. The remaining error assigned is based on the court's direction of a verdict. Both errors assigned may be disposed of by considering whether the appellant would have been entitled to recover if the testimony above mentioned had not been excluded. Some other facts will be mentioned later.

1. The death of the decedent is shrouded in mystery. The negligence of the defendant, if any, could make no difference in the case unless it was the proximate cause or one of the proximate causes of the death. The evidence possibly shows that decedent was on the track at the moment of death. It does not appear how long. It seems reasonably clear, and it must be held to be established by the evidence that he did not carry out his orders, to-wit: go one fourth mile and plant one torpedo, then go one fourth mile further and plant two torpedoes and then come back to the first torpedo to stand there and flag train No. 17. The theory that the torpedoes had been properly planted but had in some way fallen off the rails is pure conjecture, particularly in view of the unlikelyhood that all three would have fallen off, and in view of the fact that the time was short and that it is shown that nothing went over the track, after they should have been planted, to the time that No. 17 came. The only rational conclusion that can be drawn from this is, that the decedent never got any further back from the freight train than the place where he was struck, which was about 740 feet east of that train. Decedent planted a torpedo at that place, but when he did so is just as uncertain as the length of time that he had been there. Two or more possible theories might be adopted to explain the death of the decedent. But there is no evidence in the case that

would authorize us to adopt one in preference of another. And it is well established that where two inferences may be deduced, one of which authorizes recovery and the other not, and both inferences are equally reasonable, the inferences meet and destroy each other; neither has any probative force and one cannot be arbitrarily chosen in preference of the other. Ginsberg v. Adding Machine Co., 204 Mich. 130, 170 N. W. 15; Spring Canyon Coal Company v. Industrial Commission, 58 Utah 608, 201 Pac. 173; Searles v. Railway Co., 101 N. Y. 661, 5 N. E. 66. However, counsel for appellant have apparently adopted the theory hereinafter shown, and we shall examine it and determine whether under it the appellant is entitled to recover.

2.   Counsel for the appellant claim that the defendant was negligent in not notifying the persons in control of train No. 17 that this train was to "saw by" the freight train at Burns, since, had such notice been given, train No. 17 would have been under control and the engineer would have expected a flagman on the track. No authorities are cited to sustain such contention. The testimony shows that this is not the custom on, and rule of, railroads, but that, on the contrary, it is the duty of the conductor of the inferior train to look out for the train that has superior rights, and to stop at the proper place and let the train with superior rights go by, giving the notice which the flagman in the case at bar was ordered to give. We cannot say that such rule and custom is contrary to the requirements of reasonable care in the operation of railroads, and the contention made cannot be sustained.

3.   The other acts of negligence relied on by the appellant are (1) the display of a green instead of a red light on the back of the caboose of the freight train; (2) the excessive rate of speed of train No. 17; (3) the defect in the headlight on the engine of train No. 17; (4) the failure

of the engineer on train No. 17 to look. Counsel for appellant argue that the evidence shows that the decedent was on the west-bound track, in as much as he was struck on the left side and because he placed the torpedo on the south instead of the north rail, and that he was not seen because of the excessive rate of speed of the train, because of the defective headlight and because the engineer was not looking. Again, they say that the decedent, seeing that the train did not slow up, took "a last chance and attempted to and did give the emergency signal of one torpedo" and was killed in the attempt. Counsel evidently mean that decedent went upon the track just before he was struck. It is apparent, however, that if this theory is correct—and it is only a theory, but, perhaps, as good as any other—the charges of negligence as to the defect in the light and the failure of the engineer to look and see the decedent on the track must be eliminated from the case, for it is reasonably clear that under this theory the accident could not have been prevented even though the light had been good and the engineer had looked and seen. At least there is not a scintilla of evidence in the case to show that the train could have been stopped in time to have prevented the accident if the engineer had discovered the decedent on the track. In fact the testimony in the case shows that the engineer looked but did not see the decedent, and the testimony in reference to the defect in the light is at best but weak, since all that is shown is that it was not "perfect," and we are not prepared to say that this was sufficient to show negligence. Hence we shall give no further consideration to these charges of negligence and shall confine ourselves to the consideration of the other claims herein.

4. The accident occurred in the night time, in a thinly populated district where few if any, people were expected to be near the track, and the rate of speed of train No. 17, whether running at thirty five miles or at fifty miles per

hour could not, particularly in view of the rule of the company that the maximum speed at the place should not exceed sixty miles per hour, be deemed to be negligent per se.  Hines v. Sweeney, 28 Wyo. 57, 201 Pac. 165, 201 Pac. 1018.  The display, however, of a green light, instead of a red light, at the rear of the caboose of the freight train, was an act of negligence, and if the duty to display the red light was owing to the decedent, and the failure to do so was one of the proximate causes of the death of the decedent, the company is liable to some extent under the Federal Employer's Liability Act, no matter how negligent the decedent may have been.  Hines v. Sweeney, supra.  The display of the green light instead of the red light could not, of course, make any difference, at least in this case, except for the effect which the green light had on the course of train No. 17, or rather the want of effect which the red light would have had on that train.  That train ran faster than it otherwise would have done in approaching the place of accident, because of the display of the green light at the rear of the freight train.  The testimony shows that to be true and that would, naturally, be expected.  And the case reduces itself to the ultimate proposition whether the rate of speed of that train, under the circumstances, was a material factor—one of the proximate causes of the decedent's death.  The engineer testified that the train would have stopped just behind the freight train, or probably, within 100 feet thereof.  This, however, would still have been approximately 600 feet west of the place where the decedent was killed.  The speed at which the train would have run, had the red light been displayed, is not shown, nor does it appear in what time the train could have been stopped if it had run at the rate at which counsel claim it should have run.  Hence the evidence leaves it uncertain as to whether the speed had any connection with the death in question.  For aught that appears herein, the death might have occurred

any way, if the train had run at a much lower speed than it did.

5.   But counsel for appellant say that the decedent may have realized that the engineer on train No. 17 had paid no attention to signals; that he may have misjudged the speed of that train, and that he would not have ventured upon or have been on the track had he appreciated the rate of speed.   Now the railroad company could not be held responsible for that misjudgment, unless that was induced by its negligence, which in this case, if any, would be the display of the green light at the rear of the freight train.   It is at least doubtful that this fact induced the misjudgment; for in view of the fact that he knew that he himself had failed to give the warning signals which he was required to give, he must, upon the theory proposed, have realized the fact that the engineer on No. 17 paid no attention to any warning signal on the rear of the freight train; in other words he must have known that there was a green, instead of a red light at the rear of that train, and his misjudgment could not, accordingly, well have been induced by reason of that error.   If the speed of train No. 17 had been greater than it should have been by reason of other facts on which the decedent had a right to rely, there would be more force in the claim of appellant, but as we have already seen, the speed was not negligent, unless it was so by reason of the error in the display of the light.   Let us assume, however, that the misjudgment spoken of was induced to some extent by reason of the display of the green, instead of the red light, can we say that the negligence in this respect was negligence also toward the decedent and that it was one of the proximate causes of the death in question?   We think not.   In Coleman's Admx. v. Ry. Co., 139 Ky. 559, 63 S. W. 39, it was held that failure to have a servant on the rear of a backing train to give warning of its approach to a street crossing was not negligence as to a flagman at the cross-

ing who could have seen the train if he had been performing his duty to keep a watch for approaching trains. The court, in the course of the opinion said:

"It was his duty to watch trains, and to keep himself out of unnecessary danger. It is difficult to imagine how decedent could possibly have been struck by the train unless he was neglecting one of these duties; for, if he failed to note the approach of the train, it was a neglect of his duty, and such a one that, had it resulted in the injury to a stranger, would unquestionably have made his master, the appellee, liable. Or, did he know of the train's approach, and, from his experience and the nature of his employment, knew the danger of standing too close to the track, and yet did so, the calamity of his death would be due solely to his own carelessness. A servant of a steam-railroad company, who is charged with an important and particular duty to his master and to the public, will not be allowed to profit by any neglect of that duty. Not only the fairest principles of justice between men would prevent it, but also public policy forbids that a premium should be placed by the law upon the neglect of such duty; and such would be done did the courts allow a recovery by the servant from the master for the former's injury, which could not have resulted save from his neglect of such duty. Those in charge of the train had the right to presume that decedent was in the discharge of his duty at the point of the crossing, and that therefore he was noting the train's approach, and doing all that was necessary to relieve the master from liability on that account. The master was under no obligation to give the flagman special notice of that which it was already his duty to know, or to provide a brakeman or other servant for the rear of the car to warn him to take notice of that which it was his primary duty to observe."

In the case of International & G. N. Co. v. Reiden, 48 Tex. Civ. App. 401, 107 S. W. 661, a flagman disobeyed the duties of going back and warning the following train by placing torpedoes, and flagged it from a wrong place, where he stepped on a rotten rail, fell and was injured by the train. The court said in part:

"A railway company has the right to rely upon its servants obeying the rules it has ordained for the safety of its employees, its passengers and property. And if, in any instance, it can rely upon an employe discharging his duty, not only to his master, but to himself, his fellow servants and the public, it has the right to assume that when an occasion is clearly presented for a servant to obey a rule, which, if disobeyed, will imperil the servant's own life as well as the lives of others, that he will obey it to the letter. * * * That the occasion had arisen which required its observance; that the plaintiff knew the rule and that it was his duty to observe it; and that he disregarded it, are facts shown by the evidence to be equally clear. If, then, he had placed one torpedo on the rail at least twenty telegraph poles from his train, or from that part of it which was on the main track, and one torpedo on the same rail at a further distance of ten telegraph poles from the first torpedo, and then taken his position midway between the two torpedoes, to stop the train with red signals, he would not have been injured by reason of stepping on the rotten end of the cross-tie, nor could such an injury have been anticipated by the railway company."

In the case of Ellis's Admr. v. Ry. Co., 155 Ky. 745, 160 S. W. 512, it was claimed, as in the case at bar, that the railroad company owed a flagman the duty to look out for him and to give him reasonable warning of the approach of a train, which he was ordered to flag. The court held that the railroad company owed him no such

duty and that it was not liable under the Federal Employers' Liability Act. The court said in part:

"From the evidence in this case Ellis was a flagman with the duty to keep a lookout for trains, and it is difficult to conceive upon what basis appellant contends that trainmen should keep a lookout for him. While it was Ellis's duty to flag east bound trains, that is, trains approaching the bridge from the west, still to properly perform his duties he should have kept alert and awake so that even if upon the track he could have removed himself from danger of a train although coming from the other direction. When a flagman is sent out to watch for trains and warn them of danger, the company and its trainmen have a right to presume that he will not only watch for trains, but also for his own safety, and his failure to do this is his own negligence, and he cannot recover of the company for an injury which he received by reason of his neglect, unless his presence and peril were discovered by those in charge of the train in time to avoid striking him, by the exercise of ordinary care."

Marklinger v. Union Pacific R. Co., 95 Kan. 69, 147 Pac. 1132, is very similar to the case at bar. In that case there was negligence in not sounding the whistle as there was negligence in the case at bar in displaying the green instead of a red light. The court, however, held that the duty to sound the whistle was not a duty owing the flagman, saying:

"The acts relied upon as constituting actionable negligence on the part of the defendant are the failure to sound the whistle for the crossing and as an answer at the time the caution signal was reached, and the failure to stop the train sooner. The failure to blow the whistle for the crossing was not the omission of a duty owing to the flagman * * * The requirements that the engineer

should sound the whistle in answer to the caution signal, and should stop the train promptly upon hearing the stop signal, were obviously intended for the protection of the passengers, and not of the flagman, and their violation could not be the foundation of an action on his part.''

An instructive case is that of Sears v. Ry. Co., decided by the court of Civil Appeals of Texas, as found in 247 S. W. 602, and the commission of Appeals, as found in 266 S. W. 400. In that case a flagman after putting out his signal went to sleep near the track and was killed by a train. The negligence alleged in that case was that the engineer failed to see the decedent on the track. It was held that the defendant owed no look-out duty to the decedent and that the accident could not have been anticipated. The court of civil appeals said among other things:

''If it be conceded that the red lantern was placed by Sears in the proper place to give warning of danger to the engineer, it must be further conceded that it was so placed to warn those in charge of an approaching train of danger to said train and its passengers and of the danger to trains ahead. It certainly was not intended to be, nor was it in fact, even a remote warning that the brakeman who set the warning was or could probably be asleep on the track or so near thereto as to be struck by the engine; no such danger could have been reasonably anticipated by the engineer had he seen the warning signal. As already stated, an injury is not actionable if it could not have been forseen or reasonably anticipated.''

And the commission of appeals said:

''Like the omission of any other precaution required at common law or even by statute  *  *  *  the disobedience of a rule is only negligent towards those who have a right

for the protection of which the duty arises.  And as has been seen, the deceased in this case was not in the latter position.  In addition, a failure of compliance with the rule was not as to him the proximate cause of his death, because a person in his situation could not have been reasonably anticipated.''

See also Louisville & N. R. Co. v. Seeley's Admr., 180 Ky. 308, 202 S. W. 638, L. R. A. 1918 D. 925; Cincinnati etc. Ky. Co. v. Carter, 180 Ky. 765, 203 S. W. 740.

The facts and circumstances shown in the case at bar as to the death of the decedent are meager, as heretofore stated.  For aught that appears he may have been asleep near the track just as the decedent in the Sears case.  If the injury could not have been anticipated in that case, neither could it in the case at bar.  Both the conductor on the freight train and the engineer on train No. 17 had a right to presume that decedent would carry out his instructions and that he would look out for his own protection.  They could not well be held to have anticipated that with the light of the engine of the passenger train in plain sight, a flagman whose duties it was to flag that train, would suddenly appear, or remain, on the track, at a place different from that where under the rules he was supposed to be, after apparently totally neglecting his specific duties.  The primary duty for the decedent's protection devolved upon himself.  It did not, as counsel for appellant seem to assume, devolve upon other employees of respondent.

Counsel appeal to the rule mentioned in Hines v. Sweeney, supra, that in order to constitute actionable negligence, a particular injury to a particular person is not necessary to be anticipated.  The doctrine is correct and was rightly applied to the facts in that case.  But we stated therein that it was a close one on the element of anticipation, and the facts in that case were totally dissimilar to the facts in the case at bar.  It is said that what

may be reasonably anticipated is always a very delicate question, and much must depend upon the facts of the individual case. 22 R. C. L. 122. In the case at bar the conductor who displayed a green light instead of a red light ought to have anticipated that injury might result to persons and property on the freight and the passenger trains. Such injury was within the field of reasonable anticipation, even though a particular injury to a particular person could not reasonably have been anticipated. But the injury in question was not within that field; and should be in order to come within the rule of Hines v. Sweeney, supra; in fact it bore no relation to it whatever. The decedent cannot be placed in the same catagory with the persons on the two trains, because it was his duty just as much as that of the conductor's to protect them. This conclusion would seem to dispose of any theory other than that herein mentioned which counsel of appellant might adopt as to the circumstances of the decedent's death.

It follows from what we have said that the judgment of the district court must be affirmed, and it is so ordered.

*Affirmed.*

POTTER, Ch. J., and KIMBALL, J. concur.